# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KELLY OLIVIERA, ) | CIVIL ACTION |
| ) | FILE NO. _____ |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| CITY OF ATLANTA, GEORGIA; ) | |
| HORACE WYATT, in his ) | |
| Individual Capacity; CHRISTOPHER ) | |
| PATTERSON, in his Individual ) | |
| Capacity; CRYSTAL GAINES, ) | |
| in her Individual Capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Kelly Oliviera ("Plaintiff" or "Oliviera") respectfully submits the following Complaint:

## INTRODUCTION

At all times relevant to this dispute, Defendant Horace Wyatt is the Operations Manager at the City of Atlanta Municipal Court. For several years prior to the filing of this lawsuit, Wyatt used his position and authority of his office to engage in a pattern and practice of sexually harassing his female subordinates and retaliating against them when they rejected his sexual advances. Wyatt

subjected Plaintiff to repeated unwanted sexual advances, comments, and touchings. Plaintiff rejected these advances. Plaintiff not only rejected the advances, she opposed Wyatt's comments and conduct by reporting him to his supervisor, Christopher Patterson. After her complaints, Wyatt continued to discriminate against Plaintiff based on her gender and to retaliate against her based upon her complaints of such discrimination.

Either Defendant Christopher Patterson, as the Court Administrator, or Judge Crystal Gaines, as the acting Chief Judge, was the senior official exercising disciplinary measures, employment retention, and termination authority over employees of the City of Atlanta Municipal Court. Consequently, Plaintiff brings claims of sexual harassment, both hostile work environment and tangible employment action, and her retaliation claim against both the City and the individual Defendants under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The City of Atlanta is also liable for identical claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"). Plaintiff also asserts interference and retaliation claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA") against the City. Plaintiff seeks declaratory and injunctive relief, damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1. Plaintiff's claims under the Fourteenth Amendment, which are actionable under 42 U.S.C. § 1983, and her claims under Title VII and the FMLA present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

3. Plaintiff Oliviera filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The charge was transferred to the United States Department of Justice, which issued her a Notice of Right to Sue on December 20, 2013.

## THE PARTIES

4. Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. Plaintiff is a former employee of the City of Atlanta.

5. Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*. in that she had been employed with the City of Atlanta for

more than 12 months and worked more than 1,250 hours in the 12 months preceding her approved FMLA leave.

6. Defendant Wyatt is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at his place of business at 150 Garnett Street SW, Atlanta, Georgia 30303.

7. Defendant Patterson is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at his place of business at 150 Garnett Street, SW, Atlanta, Georgia 30303.

8. Defendant Gaines is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at his place of business at 150 Garnett Street, SW, Atlanta, Georgia 30303.

9. The City of Atlanta ("The City") is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia. The City of Atlanta may be served with process by serving Mayor Kasim Reed at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

10. The City is a covered employer under Title VII.

11. The City is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

12. The City had more than fifty (50) employees within a seventy-five (75) mile radius in each of twenty (20) or more consecutive calendar weeks in the current or preceding year within the meaning of FMLA, 29 U.S.C. § 2601 *et seq*.

## FACTUAL ALLEGATIONS

13. Plaintiff started her employment at the City of Atlanta Municipal Court in January 2010 through an internship while she was a student at Georgia State University.

14. After her internship ended, Plaintiff was hired into a full-time position in April 2010. Her first position was data entry clerk in the clerk's office. Her work area was near the office of Defendant Horace Wyatt, the Director of Operations at the Court.

15. Almost immediately after she started her full-time position in April 2010, Defendant Wyatt began sexually harassing Plaintiff. The sexual harassment was both verbal and physical and included, but was not limited to the comments and actions described in the following paragraphs.

16. Wyatt started by ogling Plaintiff's body up and down while moving his mouth, lips, and tongue.

17. By September 2010, Plaintiff was selected by Judge Clinton Deveaux to be his case manager.

18. At that point, the harassment escalated. As Plaintiff walked by, Wyatt would say things like "damn" and "your legs look sexy."

19. When the demands of her job required that she enter Wyatt's office, Wyatt mentioned to Plaintiff that he enjoyed going to strip clubs because he loved white "pussy," loved that the strippers put their "pussy" in his face, and that strippers were especially gifted at fellatio. Wyatt also stated aloud "wonder what your pussy looks like?"

20. Stunned and disgusted by these revelations, Plaintiff told Wyatt to stop talking to her in that manner.

21. Wyatt then began to solicit Plaintiff directly by sending her text messages asking her to meet him at a motel.

22. When Plaintiff would not willingly comply with Wyatt's requests, he began to force contact with her. On occasion, Wyatt grabbed and rubbed Plaintiff's thighs when she was turned away from him.

23. Shortly after one of those incidents, Wyatt pulled Plaintiff in for a hug while they were alone on the elevator. As she wiggled to get out of his grasp,

Wyatt told her that her "tits were perky." After he let go of Plaintiff, Wyatt asked her to turn around so he could see her "ass."

24. In 2011, Wyatt filled in for Plaintiff's co-worker in the courtroom. On that day, Wyatt stared at Plaintiff's thighs and buttocks. Wyatt wrapped his legs around the chair in which Plaintiff was sitting, and told her that her "ass looked so fat" in her pants. He asked her to stand up so that he could see her buttocks. Plaintiff reminded Wyatt that Judge Deveaux was nearby and that the courtroom cameras were recording.

25. In May 2011, Judge Deveaux informed Plaintiff that he was going to retire the following month. Plaintiff was terrified that her protector would be leaving.

26. Almost immediately after Judge Deveaux announced his retirement, Wyatt informed Plaintiff that she would be demoted to Data Entry clerk. Wyatt told her that Defendant Gaines and Defendant Patterson ordered him to demote her.

27. Plaintiff immediately approached Judge Deveaux to voice her concerns. She complained to Judge Deveaux about Wyatt's sexually inappropriate and hurtful touching and comments.

28. At the Judge's urging, Plaintiff reported Wyatt's misconduct to Chris Patterson, the Court Administrator. When she asked to transfer to a different department, Patterson told her that she was going to be promoted to a Quality Control position and just to hold on a little longer. Upon information and belief, after Patterson consulted with Wyatt, that promotion was rescinded. That same day, Wyatt ordered a court employee to remove all the files from Plaintiff's office. From that point forward, Plaintiff was not given any work to complete.

29. Bored with her new position, Plaintiff applied for a criminal records analyst position. She was told by that division's manager that she had the position. The offer was rescinded unexpectedly.

30. In September 2011, Wyatt assigned Plaintiff to another position, the DUI Friday calendar. Although she was still managed by Wyatt, Plaintiff relished the idea of doing the meaningful work she had done when she worked for Judge Deveaux. She was not trained on this unique calendar, and her first day did not go well. Wyatt said to her "that's what you get."

31. In November 2011, an employee in Human Resources notified the HR department of Plaintiff's plight after Plaintiff had revealed to her that Wyatt had subjected her to rampant sexual harassment. At that point, Plaintiff cooperated in the HR department's investigation of Wyatt's misconduct.

32. Unfortunately, HR was of no help to Plaintiff and sought only to protect Wyatt.

33. Beginning in January 2012, Plaintiff's mental condition from the stress of working for Wyatt became so unbearable that she began to take FMLA intermittently over the following few months.

34. Plaintiff was fired in May 2012 before her FMLA leave had expired for lack of work.

35. Defendant Wyatt has not been terminated or otherwise disciplined for his misconduct towards Plaintiff.

36. Upon information and belief, Plaintiff was neither the first employee to be abused by Wyatt nor the first to report such abuse to the City.

37. The EEOC determined that Plaintiff "was discriminated against on the basis of her sex and subjected to retaliation in violation of Title VII."

**Governmental and Decision Maker Liability**

38. The highest County official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the City of Atlanta Municipal Court, including the Plaintiff, made or approved the adverse employment actions in this case.

39. The above-pled employment actions were neither subject to, nor required, higher review or approval. Their above-pled employment actions were also not subject to appeal or reversal by any other official or entity.

40. Upon information and belief, Defendant Patterson or Defendant Gaines was the final decision maker with respect to each of the unlawful employment actions giving rise to this Complaint.

41. Upon information and belief, Defendant Patterson or Defendant Gaines was the final policy maker with respect to each of the unlawful employment actions giving rise to this Complaint.

42. The individual Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

43. At all times material to this Complaint, it was clearly established law that subjecting a subordinate to sexual harassment or a sexually hostile working environment based upon gender violates the Equal Protection Clause and Title VII. At all times material to this Complaint, it was clearly established law that a supervisor may not take an adverse employment action against a subordinate because she rejects or complains about his sexual advances.

**Punitive Damages Allegations**

44.     Defendants Wyatt, Patterson, and Gaines undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to the Plaintiff and her federally protected rights.

45.     Additionally and in the alternative, Defendants Wyatt, Patterson, and Gaines undertook all of the above-pled conduct with reckless disregard for the Plaintiff and her federally protected rights.

### COUNT I
### Sexual Harassment and Retaliation
### (42 U.S.C. § 1983 Against Defendants City of Atlanta and Defendants Jacobs and Smith in their Individual Capacities)

46.     Plaintiff incorporates each of the above factual allegations as if fully restated here.

47.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws regardless of her gender.

48.     Defendant Wyatt violated Plaintiff's rights to equal protection by, among other things, subjecting her to a sexually harassing and hostile working environment.  Defendants Wyatt and Patterson violated her rights to equal protection by taking adverse employment actions against the Plaintiff for her refusal to acquiesce to sexual advances and for reporting such harassment.

Defendants Patterson, Gaines, and the City violated her rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

49. The conduct of Defendants constitutes unlawful sexual harassment, based upon gender, in violation of the Equal Protection Clause. Additionally and in the alternative, Defendants' unlawful conduct constitutes sexual harassment culminating in an ultimate employment action against the Plaintiff.

50. Defendants Wyatt, Patterson, and Gaines undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State and local law.

51. Defendants Wyatt, Patterson, and Gaines's unlawful conduct violated the above-pled clearly established law.

52. As a direct and proximate result of all of the Defendants' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

53. Defendants Wyatt, Patterson, and Gaines undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against them.

54. Alternatively, Defendant Wyatt, Patterson, and Gaines undertook their unlawful conduct recklessly with respect to the Plaintiff and their federally protected rights, entitling Plaintiff to recover punitive damages against them.

## COUNT II
### Sexual Harassment
### (Title VII Against Defendant City of Atlanta)

55. Plaintiff incorporates each of the above factual allegations as if fully restated here.

56. Defendant City violated Plaintiff's rights under Title VII by, among other things, subjecting her to a sexually harassing and hostile working environment, taking adverse employment actions against her for her refusal to acquiesce to sexual advances, and by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

57. Defendant City's conduct constitutes unlawful sexual harassment by creating an unlawful hostile working environment, based upon gender, in violation of Title VII.

58. Additionally, Defendant City's unlawful conduct constitutes sexual harassment culminating in tangible employment actions against Plaintiff.

59. As a direct and proximate result of Defendant City's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT III
### Retaliation
### (Title VII Against Defendant City of Atlanta)

60. Plaintiff incorporates each of the above factual allegations as if fully restated here.

61. Title VII prohibits employers from retaliating against employees who report or oppose sexual harassment.

62. The City unlawfully retaliated against Plaintiff, in violation of her rights under Title VII by, among other things, taking adverse employment actions against her because she opposed and/or reported Defendant Wyatt's sexually harassing behavior.

63. The City's conduct constitutes unlawful retaliation in violation of Title VII.

64. As a direct and proximate result of the City's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT IV
## FMLA Interference
## (Against Defendant City of Atlanta)

65. Plaintiff incorporates all preceding paragraphs of the Complaint.

66. At the time that Plaintiff took intermittent FMLA leave in January 2012, Plaintiff was eligible for FMLA leave.

67. Plaintiff took FMLA leave related to her own serious emotional health conditions suffered while Defendant Wyatt sexually harassed Plaintiff and the remaining Defendants' failure to protect her from his misconduct.

68. The City interfered with Plaintiff's right to take leave under the FMLA by, among other things: (1) failing to approve her request for FMLA leave and (2) terminating Plaintiff's employment despite the existence of a valid reason for her alleged work absences and her request for medical leave.

69. The City's actions in interfering with Plaintiff's leave were intentional and willful and committed with reckless disregard for her right to reinstatement following FMLA leave.

70. The effect of Defendant's FMLA interference has been to deprive Plaintiff of her position at the Municipal Court, wages, health insurance, and prospective retirement benefits.

71. Plaintiff is entitled to both equitable and monetary relief for Defendant's violations of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay and/or reinstatement, lost benefits, attorneys' fees and costs of litigation, and liquidated damages.

## COUNT V
## FMLA Retaliation
## (Against Defendant City of Atlanta)

72. Plaintiff incorporates all preceding paragraphs of the Complaint.

73. At the time that Plaintiff took FMLA leave in January 2012, Plaintiff was eligible for FMLA leave.

74. Plaintiff took FMLA leave related to her own serious emotional health conditions suffered while Defendant Wyatt sexually harassed Plaintiff and the remaining Defendants' failure to protect her from his misconduct.

75. Defendant retaliated against Plaintiff for taking FMLA leave by, among other things, terminating Plaintiff's employment despite the existence of a valid reason for her alleged work absences and her request for medical leave.

76. Defendant's actions in retaliating against Plaintiff for taking FMLA leave were intentional and willful and committed with reckless disregard for his rights under the FMLA.

77. The effect of Defendant's FMLA retaliation has been to deprive Plaintiff of her position at the Municipal Court, wages, health insurance, and prospective retirement benefits.

78. Plaintiff is entitled to both equitable and monetary relief for Defendant's violations of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay or reinstatement, lost benefits, attorneys' fees and costs of litigation, and liquidated damages.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

a. declaratory judgment that Defendants violated the Plaintiff's rights under the Equal Protection Clause;

b. declaratory judgment that Defendant City violated the Plaintiff's rights under Title VII;

c. declaratory judgment that Defendant City violated the Plaintiff's rights under the FMLA;

d. an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

e. full back pay from the date of Plaintiff's constructive or express termination, taking into account all raises to which Plaintiff would have been

entitled but for her unlawful denial of promotion and termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

  f. reinstatement of Plaintiff to her former position with the City of Atlanta or in the alternative, front pay to compensate Plaintiff for her lost future wages, benefits, and pension;

  g. compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

  h. punitive damages, against Defendants Wyatt, Patterson and Gaines in their individual capacity, in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendants Wyatt, Patterson and Gaines for his conduct toward Plaintiff and deter them from similar conduct in the future;

  i. liquidated damages for Defendant City's willful violations of the FMLA;

  j. reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and the FMLA; and

  k. other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

                              Respectfully submitted,

                              **THE BUCKLEY LAW FIRM, LLC**

                              <u>s/Eleanor Mixon Attwood</u>
                              Georgia Bar No. 514014
                              emattwood@buckleylawatl.com

Promenade, Suite 900
1230 Peachtree Street, NE
Atlanta, GA  30309
Telephone: (404) 781-1100
Facsimile:   (404) 781-1101

Counsel for Plaintiff