# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| KELLY OLIVEIRA, | ) | CIVIL ACTION |
| | ) | FILE NO. 1:14-cv-00708-CC-JSA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ATLANTA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CONSOLIDATED PRETRIAL ORDER

Plaintiff Kelly Oliveira ("Plaintiff" or "Oliveira") and Defendants City of Atlanta (the "City") and Horace Wyatt ("Defendant Wyatt" or "Wyatt") (collectively "Defendants" or the "City Defendants")) jointly submit this Proposed Consolidated Pretrial Order.

1.

**There are no motions or other matters pending for consideration by the Court except as noted below:**

There are no pending motions.  However, the parties anticipate filing motions *in limine* prior to trial.

2.

**All discovery has been completed, unless otherwise noted, and the Court will not consider any further motions to compel discovery.  (Refer to LR ND Ga 37.1B).  Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.**

The City will subpoena Plaintiff's medical records from Kaiser Behavioral Health.  Plaintiff will object to such subpoena as untimely and irrelevant.

3.

**Unless otherwise noted, the name of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.**

The parties are correct and complete and there is no question as to misjoinder or non-joinder of any parties.

4.

**Unless otherwise noted, there is no question as to the jurisdiction of the Court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)**

There is no question regarding this Court's jurisdiction.  The Court has federal question jurisdiction over Oliveira's claims against Defendant City of Atlanta for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* and interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*   The Court also has federal question jurisdiction over Oliveira's claims against individual Defendant Wyatt under 42 U.S.C. § 1983 for violation of her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, based on alleged acts of sexual harassment and unlawful retaliation.

5.

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

Plaintiff Oliveira:

Eleanor M. Attwood
LEGARE, ATTWOOD & WOLFE, LLC
400 Colony Square, Suite 1000
1201 Peachtree Street, NE
Atlanta, Georgia  30361
Telephone:  470.823.4000
Facsimile:  470.201.1212

Defendants:

Joan E. Clarke
Anissa Floyd
CITY OF ATLANTA LAW DEPT.
55 Trinity Avenue, S.W.
Suite 5000
Atlanta, GA  30303-3520
Telephone:  404.546.4130
Facsimile:  404.979.7744

6.

**Normally, the Plaintiff is entitled to open and close arguments to the jury.  (Refer to LR 39.3B(2)(b), NDGa).  State below the reasons, if any, why the Plaintiff should not be permitted to open arguments to the jury.**

None.

7.

**The captioned case shall be tried ( X ) to a jury or (__) to the court without a jury, or (__) the right to trial by jury is disputed.**

8.

**State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability or damages. State briefly the reasons why trial should or should not be bifurcated.**

The parties do not request bifurcation.

9.

**Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the Court propound to the jurors concerning their legal qualification to serve.**

10.

**Attached hereto as Attachment "B-1" are the general questions which Plaintiff wishes to be propounded to the jurors on voir dire examination.**

**Attached hereto as Attachment "B-2" are the general questions which Defendants wishes to be propounded to the jurors on voir dire examination.**

**The Court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding be necessary for counsel to submit questions regarding these matters.  The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy, which shall be established by each judge.**

11.

**State any objections to Plaintiff's voir dire questions.**

*See* Attachment B-3.

**State any objections to Defendants' voir dire questions.**

*See* Attachment B-4.

12.

**All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six members, unless the parties stipulate otherwise.  The parties must state in the space provided below the basis for any requests for additional strikes.  Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870.**

The parties do not seek any additional strikes.

13.

**State whether there is any pending related litigation. Describe briefly, including style and civil action number.**

There is no pending related litigation.

14.

**Attached hereto as Attachment "C" is Plaintiff's outline of the case, which includes a succinct factual summary of Plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statues, ordinances, and illustrative case law creating a specific legal duty relied upon by Plaintiff shall be listed under a separate heading. In negligence cases, and every act of negligence relied upon shall be separately listed. For each item of damage claimed, Plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

15.

**Attached hereto as Attachment "D" is the Defendants' outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the Defendants shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

16.

**Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.**

17.

**The legal issues to be tried are as follows:**

**Plaintiff's Proposed Legal Issues to be Tried:**

1. Whether City of Atlanta retaliated against Ms. Oliveira based on her protected conduct, in violation of Title VII *et seq.*;

2. Whether Defendant Wyatt sexually harassed and retaliated against Ms. Oliveira based on her gender;

3. The amount of compensation denied or lost to Ms. Oliveira by reason of the violations of the Title VII and awardable to her if a verdict in her favor is returned;

4. The amount of interest to be awarded on compensation denied or lost to Ms. Oliveira by reason of the violation;

5. Whether City of Atlanta violated the FMLA by interfering with Ms. Oliveira's right to take medical leave;

6. Whether City of Atlanta violated the FMLA by retaliating against Ms. Oliveira for taking medical leave;

7. If City of Atlanta violated Ms. Oliveira's rights under the FMLA, whether the City's conduct was willful as defined by FMLA;

8. Whether Ms. Oliveira should be awarded an additional amount as liquidated damages equal to the sum of the amount described in issues above;

9. Whether Ms. Oliveira should be awarded front pay damages, and if she should be awarded front pay damages, the amount of such front pay damages;

10. Whether Ms. Oliveira is entitled to other equitable relief under Title VII and § 1983;

11. Post-trial, the amount of reasonable attorney's fees and other costs of the action to be paid to Ms. Oliveira by Defendants if Ms. Oliveira prevails;

12. Whether Ms. Oliveira is entitled to compensatory damages against City of Atlanta under Title VII;

13. Whether Ms. Oliveira is entitled to compensatory and punitive damages against Defendant Wyatt under § 1983.

17.

**Defendants' Proposed Legal Issues to be Tried:**

1. Whether Plaintiff has proven by a preponderance of the evidence that the City retaliated against her for engaging in statutorily protected activity by terminating her employment in violation of Title VII;

2. Whether Plaintiff has proven by a preponderance of the evidence that retaliation was the "but-for" cause of her termination;

3. Whether Plaintiff has proven by a preponderance of the evidence that she suffered damages as a result of the alleged retaliation;

4. Whether Plaintiff has proven by a preponderance of the evidence the amount of full, just, and reasonable compensation, if any, for her damages as a result of the alleged retaliation under Title VII;

5. Whether Plaintiff failed to mitigate her damages, if any, by not being reasonably diligent in seeking substantially equivalent employment to the position she held with the City;

6. Whether Plaintiff has proven by a preponderance of the evidence that the City interfered with her leave of absence under the FMLA by terminating her employment in violation of the statute;

7. Whether the City has proven by a preponderance of the evidence that it would have terminated Plaintiff's employment for reasons wholly unrelated to Plaintiff's FMLA leave;

8. Whether Plaintiff has proven by a preponderance of the evidence that the City retaliated against her for engaging in protected activity under the FMLA by terminating her employment;

9. Whether Plaintiff has proven by a preponderance of the evidence the amount of full, just, and reasonable compensation, if any, for her damages as a result of the alleged interference and/or retaliation under the FMLA;

10. Whether Plaintiff has proven by a preponderance of the evidence that Defendant Wyatt harassed her because of her sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

11. Whether Plaintiff has proven by a preponderance of the evidence that she suffered damages as a result of the alleged sexual harassment;

12. Whether Plaintiff has proven by a preponderance of the evidence the amount of full, just, and reasonable compensation, if any, for her damages as a result of the alleged sexual harassment;

13. Whether Plaintiff has proven by a preponderance of the evidence that she is entitled to punitive damages against Defendant Wyatt; and

14. Whether the City has proven that it acted in good faith and that its conduct was objectively reasonable with respect to Plaintiff's FMLA leave.

18.

**Attached hereto as Attachment "G-1" for the Plaintiff and "G-2" for the Defendants are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.**

**Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical sub-parts. Adequate**

space must be left on the left margin of each party's list for Court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to Plaintiff's exhibits, numbered blue stickers to the Defendants' exhibits, and numbered white stickers to joint exhibits.  When there are multiple Plaintiffs or Defendants, the surname of the particular Plaintiff or Defendants shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the Court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

Attachment "G-1" is a list of Plaintiff's proposed exhibits and Attachment "G-2" is a list of Defendants' proposed exhibits.  The parties have not supplied their objections to the exhibit lists as there was a numbering issue making it difficult to identify Defendants' exhibits. The parties will work towards submitting a joint exhibit list and their respective objections well before the Pre Trial Conference.

The following designated portions of the testimony of the persons listed below may be introduced by deposition.

9

As far as the parties are aware, every witness will be available for trial.  If a witness becomes unavailable for trial, the parties will provide deposition designations to the Court within five days of learning of such unavailability.

**Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the date the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.**

The parties may introduce by deposition the testimony of any witness appearing on either party's witness list who is unavailable for trial, who is outside the Court's subpoena power, or whose testimony may be necessary for impeachment, rebuttal or other authorized use under the Federal Rules of Evidence. parties need not designate testimony to be used solely for impeachment in advance of trial.  To the extent this Court permits either party to offer only part of a deposition in evidence, the parties reserve the right to require the party offering the testimony to introduce other parts of the deposition which ought to be considered in fairness, and to themselves introduce any other parts of the deposition, pursuant to Fed. R. Civ. P. 32(a)(6).

The parties request permission to file any cross-designations to deposition designations with the Court ten (10) days prior to the start of trial, or such other time fixed by the Court.

19.

**Attached hereto as Attachments "___" for the Plaintiff, "___" for the Defendants are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.**

The parties reserve the right to file a trial brief and hereby jointly request that the Court permit them to file trial briefs along with their requests to charge no later than seven (7) calendar days before trial.

20.

**In the event this is a case designated for trial to the Court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, NDGa, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one page) statement of that party's contentions, covering both claims and defenses, which the Court may use in its charge to the jury.**

**Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.**

In compliance with this Court's Instructions, the parties will submit their proposed Requests to Charge no later than seven (7) calendar days before the date of trial and will submit Word versions of those Requests to Charge to the Court.

21.

**If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of the submission, parties will propose their separate forms for the consideration of the Court.**

The parties submit their separate forms.

24.

**Unless otherwise authorized by the Court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.**

The parties request additional time for argument.  The parties request thirty minutes for each party's opening and an hour for each party's closing.

25.

**If the case is designated for trial to the Court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.**

26.

**Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind plan to meet with fifteen days of the filing of this consolidated pretrial order to discuss in good  faith  the possibility of settlement of this case.  The court (_) has or (x) has not discussed settlement of this case with counsel.  It appears at this time that there is:**

        (___)        A good possibility of settlement.

        (___)        Some possibility of settlement.

        ( X )        Little possibility of settlement.

        (___)        No possibility of settlement.

27.

**Unless otherwise noted, the Court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the Court.**

**The parties respectfully request ample notice of a trial date and/or the need**

to move the trial date once set, given that most of the witnesses in this case reside in California.

28.

The Plaintiff estimates that she will require three (**3**) days to present her evidence.  The Defendants estimates that it will require two (**2**) days to present its evidence.  The parties estimate that the total trial time is five (**5**) days.

29.

**IT IS HEREBY ORDERED, that the above constitutes the pretrial order for the above captioned case (___) submitted by stipulation of the parties or (_x_) approved by the Court after conference with the parties.**

**IT IS FURTHER ORDERED, that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the Court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the Court, unless specifically authorized in writing by separate order of the Court.**

**IT IS SO ORDERED, this _____16th_____ day of ___June_____, 2017.**

_____s/ Clarence Cooper_____
Honorable Clarence Cooper
United States District Court

13

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing Proposed Consolidated Pretrial Order, which has been prepared in accordance with the form pretrial order adopted by this Court.

_s/ Eleanor M. Attwood_
Eleanor M. Attwood
Georgia Bar No. 514018
emattwood@law-llc.com

_s/ Steven E. Wolfe_
Steven E. Wolfe
Georgia Bar No. 142441
sewolfe@law-llc.com

LEGARE, ATTWOOD & WOLFE, LLC
400 Colony Square, Suite 1000
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone:  470.823.4000
Facsimile:  470.201.1212

**Counsel for Plaintiff**

_s/ Joan E. Clarke_
Joan E. Clarke
Georgia Bar No. 523854
 jeclarke@atlantaga.gov

_s/ Anissa D. Floyd_
Anissa D. Floyd
Georgia Bar No. 141747
adfloyd@atlantaga.gov

CITY OF ATLANTA LAW DEPT.
55 Trinity Avenue, S.W.
Suite 5000
Atlanta, GA  30303-3520
Telephone:  404.546.4130
Facsimile:  404.979.7744

**Counsel for Defendants**

**ATTACHMENT A**
**PROPOSED JURY QUESTIONS - LEGAL QUALIFICATIONS TO SERVE**

The parties understand that this Court propounds its own qualifying

questions and juror questionnaire.

**ATTACHMENT B-1**
**GENERAL QUESTIONS WHICH PLAINTIFF REQUESTS BE**
**PROPOUNDED TO THE JURORS ON VOIR DIRE EXAMINATION**

Plaintiff requests that the court propound the following questions to the jurors

on voir dire examination.  If a question is answered in the affirmative by a proposed

juror, Plaintiff respectfully requests leave to ask follow-up questions.

1.      Are you now or have you ever been employed by City of Atlanta, et

al.?

2.      Are any of your family members or friends now employed by or have

they ever been employed by City of Atlanta, et al.?

3.      Have you ever felt you were discriminated against at work?

4.      Have you ever been accused of discrimination/harassment?

5.      Ms. Oliveira claims in this case that she was discriminated against by

City of Atlanta, et al. on the basis of her gender. Is there anyone on the panel that

cannot fairly and objectively consider the gender discrimination claim alleged by

Ms. Oliveira?

6.      Have you ever reported or complained about any kind of discrimination

or harassment in the workplace, for example, by speaking to human resources or

someone in management?

7.      Have you ever filed a discrimination lawsuit? What was the case about?

16

8.      Have you been sued for alleged discrimination? What was the case about?

9.      Have you filed a lawsuit?  If so, what were your claims?

10.     Have you ever been sued?  If so, what were the claims against you?

11.     Do you supervise or manage other employees in your job?

12.     Have you or a family member ever worked in human resources?

13.     Have you had education or training in human resources?

14.     Have you or a family member ever had employees of your own?

15.     Have you ever worked in the legal field?

16.     Do you have a religious, spiritual, political, or other philosophical objection to the filing of civil lawsuits seeking monetary damages against a government?

17.     What news stations do you watch on TV, if any?

18.     Do you listen to any talk radio shows?  Which shows do you listen to?

19.     Do you get news from the Internet? Which websites do you visit most often for the news?

20.     Do you subscribe to any magazines or newspapers? If so, which ones?

21.     Other than what you have already told us, do you have any experience that you think might influence your function as a juror in this case?  If so, please

17

describe that.

22.     The federal laws prohibit harassment in the workplace, does anyone here think those laws should be repealed?

23.     Does anyone think that women have become too sensitive about serial comments and touchings in the workplace?

24.     Have you or a close family member ever requested and/or taken FMLA leave?

25.     Have you or a family member or friend ever been diagnosed with bipolar disorder?

26.     Have you or a family member ever been diagnosed with PTSD?

27.     Do you hold any negative impressions of a person diagnosed with bipolar disorder or PTSD?

28.     Do you believe a person with either disorder can be gainfully employed?

**ATTACHMENT B-2**

**GENERAL QUESTIONS WHICH DEFENDANTS REQUEST BE PROPOUNDED TO THE JURORS ON VOIR DIRE EXAMINATION**

1. Have you ever been terminated from your employment for any reason, including due to a lay off or lack of work?

2. If you have ever been terminated, do you believe you can fairly and objectively consider evidence presented by an employer in a case where the plaintiff's employment was terminated?

3. Do you currently hold a position or have you previously held a position where you have or had the authority to terminate others' employment?  If so, have you terminated someone's employment, including terminations due to a lay off or lack of work?

4. Do you own or operate a business where you employ others?  If so, has your business ever been sued by an employee or former employee?

5. Have you ever requested and taken a leave of absence from work under the Family Medical Leave Act of 1993, commonly known as the FMLA?

6. Has anyone ever attempted to take a leave of absence from work under the FMLA but that request was denied by your employer?

7. If you have ever taken or requested leave under the FMLA, do you believe you were disciplined or treated differently by your employer for exercising or attempting to exercise your right to take a leave of absence?

8. Have you or a coworker, family member, friend or spouse been subject to unwanted sexual comments or touching at work?

9. Have you or a coworker, family member, friend or spouse ever reported allegations of sexual harassment to an employer?

10. Do you have a coworker, family member, friend, or spouse who has been accused of sexual harassment?

11.Have you ever provided testimony in a case as a witness whether at a deposition, a trial, or a grand jury proceeding?

12. Do you hold any strong, negative opinions about the City of Atlanta or its leadership?  If so, do you believe you can fairly and objectively consider evidence presented by the City in a case against it?

13.Do you currently reside or have you ever resided within the city limits of Atlanta?

14.Do you currently have or have you ever had any disputes with the City of Atlanta including, but not limited to, disputes over water bills or disputes about any services provided by the City?

**ATTACHMENT B-2**
**PLAINTIFF'S OBJECTIONS**
**TO DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS**

Plaintiff does not have any objections to Defendants' proposed *voir dire*

questions.

**ATTACHMENT B-4**
**DEFENDANTS' OBJECTIONS**
**TO PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS**

Defendants do not have any objections to Plaintiff's proposed *voir dire* questions.

**ATTACHMENT C**
**PLAINTIFF'S OUTLINE OF THE CASE**

In 2010 and 2011, Plaintiff Kelly Oliveira, who was finishing her undergraduate degree in Criminal Justice, was employed by the City of Atlanta Municipal Court.  While Oliveira was employed, she suffered sexually charge comments and inappropriate touchings by Defendant Horace Wyatt, the Chief Operations Officer and her supervisor.  Defendant Wyatt had served in that role for decades and was known by many for behaving inappropriately towards women at the Courthouse.

By the summer of 2011, Wyatt learned that Oliveira wanted nothing to do with his advances.  In fact, in June 2011, she reported Wyatt's misconduct to the judge and co-clerk with whom she worked on a daily basis as Case Manager.  The judge then relayed her report of sexual harassment to the Court Administrator, who was Wyatt's direct supervisor.   Within days of that report, Wyatt began to sabotage her employment at the courthouse by stripping her of duties and placing her in roles without training to try to set her up for failure.  He did so with the approval of his superiors.

By late November 2011, the retaliation had become so stressful, Oliveira reached out to Municipal Court Human Resources employees.  At that point, Human

Resources recorded her complaint and began an investigation designed to exculpate Wyatt.   In that same time frame, Wyatt continued to retaliate against Oliveira by ordering his subordinates and co-workers to sabotage her efforts to find work elsewhere within the courthouse.  By January of 2012, Oliveira began to suffer under the strain to the point she required medical attention.  At that point, she requested and was approved for FMLA intermittent leave.  Throughout the winter of 2012, she was out on medical leave for blocks of time.

On April 3, 2012, Oliveira filed a charge of discrimination with the Equal Employment Opportunity Commission regarding the sexual harassment and retaliation she had suffered.  Within a few weeks of the City getting notice of that charge, Oliveira was terminated while out on FMLA approved medical leave.

Oliveira survived summary judgment on her Title VII retaliation claim against the City, her FMLA interference and retaliation claims against the City, and her sexual harassment/retaliation claim against Horace Wyatt under the Equal Protection Clause.

### Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

This list of authorities is non-exhaustive, and Plaintiff respectfully reserves the right to amend this list and to cite additional authorities not listed here.

- Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

24

- Title VII, 42 U.S.C. § 2000e *et seq.*

- *Cross v. State of Ala.,* 49 F.3d 1490, 1507 (11th Cir. 1995) (sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983).

- *Demers v. Adams Homes of Northwest Florida, Inc.*, 321 Fed. Appx. 847, 852 (11th Cir. 2009) ("communicat[ing] [her] belief that discrimination is occurring to the employer," she engaged in protected opposition conduct); *see also*, *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (anti-retaliation protections of Title VII are "not limited to individuals who have filed formal complaints, but extend[] as to those who . . . informally voice complaints to their superiors or who use their employers' internal grievance procedures").

- *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1353 (11th Cir. 1999) (protection afforded to participation is nearly absolute); *Calhoun v. EDS Corp.,* 36 F. Supp. 3d 1344, 1356-57 (N.D. Ga. 2014) ("sweeping protection given to employees who file EEOC charges").

- *Burlington Northern Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (a "materially adverse" employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")

- *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (a lateral transfer may constitute an adverse employment action if it reduces an employee's opportunity for advancement).

- *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). (reassignment with significantly different responsibilities can also constitute an adverse employment action).

- *Hinson v. Clinch County Bd. of Ed.*, 231 F.3d 821, 829 (11th Cir. 2000). (a transfer that involves a reduction in pay, prestige, or responsibility can constitute an adverse employment action under Title VII).

- *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1118-19 (11th Cir. 2001) (a transfer that results in a diminished opportunity for salary increases constitutes an adverse employment action).

- *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1118-19 (11th Cir. 2001)(to establish a causal connection, an employee must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated); *Kendall v. Cobb County, Ga.*, 14 F. Supp. 2d 1342, 1345 (N.D. Ga. 1998) (Story, J.) (same).

- *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1118-19 (11th Cir. 2001) (close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated); *Kendall v. Cobb County, Ga.*, 14 F. Supp. 2d 1342, 1346 (N.D. Ga. 1998) (Story, J.) (same).

- *Thomas v. Alabama Home Const.*, 271 Fed. Appx. 865, 868 (11th Cir. 2008) (finding that decision to terminate employee "within weeks" of employee's internal complaint supported jury's finding of retaliation); *Entrekin v. City of Panama City*, 376 Fed. Appx. 987, 997 (causation established where employer decided to terminate plaintiff two weeks after plaintiff filed Title VII complaint); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir.1986) ("short period of time of" one month between complaint and adverse decision, alone, established causation); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month time frame establishes a causal link in the *prima facie* case stage).

- *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012) (retaliatory hostile work environment created when decision makers spread rumors about

plaintiffs, damaged their reputations, disciplined them, and reassigned them); *Sims v. Dist. of Columbia*, 33 F. Supp. 3d 1, (D.D.C. 2014) (plaintiff who reported discrimination and thereafter was placed on improvement plan, denied training opportunities, denied regular schedule, and initially denied requested leave had actionable retaliation claim); *Whorton v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 334 (D.D.C. 2013) (retaliatory hostile work environment claim went to jury when she was transferred, her supplies were damaged, her psychiatric information put in a file, among other things).

- 29 U.S.C. § 2615(a)(1); *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206-08 (11th Cir. 2001) (to establish a claim for FMLA interference, plaintiff need only show that defendant denied her a benefit to which she was entitled as defendant's motivation is irrelevant); *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008) (same).

- *Wahl v. Seacoast Banking Corp. of Fla.*, No. 09-81382-CIV, 2011 U.S. Dist. Lexis 24115 (S.D. Fla. March 9, 2011) (summary judgment for plaintiff on FMLA interference claim because termination denied her continuing use of leave); *Maldanado v. The Pictsweet Co.*, 670 F. Supp. 2d 691, 692-93, 695 (W.D. Tenn. 2009) (summary judgment for plaintiff on FMLA interference claim where terminated after using intermittent FMLA leave); *Sandra Hines v. City of Atlanta*, 1:11-cv-03757-WSD) (summary judgment denied on FMLA interference claim when plaintiff was terminated while on leave).

- *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) ("To state a claim (for retaliation) under the (FMLA), a plaintiff must show that: (1) she availed herself of a protected right; (2) she suffered an adverse employment decision; and (3) there [was] a causal connection between the protected activity and the adverse employment decision."); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (same).

27

- *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (to establish a causal connection, Oliveira need only show that her protected activity and the adverse employment action are not "wholly unrelated.")

**Damages Claimed and Citations of Authority for Items of Damages**

**Back pay and other lost benefits.**   Oliveira seeks back pay and lost benefits that accrued from the time of her termination in violation of Title VII and the Equal Protection Clause pursuant to  42 U.S.C. §2000e-5(g) plus interest calculated at the prevailing rate.  *Loeffler v. Frank*, 486 U.S. 549, 558 (1988).  Back pay is designed to make the injured party whole by placing her in the position he would have been absent the discrimination.  *See* 42 U.S.C. § 2000E-5(g)(1); *Walters v. Atlanta*, 803 F.2d 1135, 1145 (11th Cir. 1986).   To make the injured party whole, back pay includes interest, bonuses, overtime, promotions, shift differentials, and fringe benefits and non-monetary compensation such as vacation and sick pay are among the items that which should be included in back pay.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1562-63 (11th Cir. 1986); *Pettway v. ACIPCO*, 494 f.2D 211, 263 (5TH Cir. 1978).  "[U]ncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating employer."  *Cox*, 784 F.2d at 1563.

Under the FMLA, Oliveira seeks actual damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost" by reason of the City's violation of the FMLA.  29 U.S.C. § 2617(a)(1)(A)(i)(I).

Oliveira's lost total compensation, not taking into consideration any raises for which he would have been eligible and benefits to which he was entitled is approximately $ 120,000.

**Raise or Front pay.**  Oliveira seeks a raise to what she would have made had her pay been maintained when she was terminated.  In the alternative, Oliveira seeks equitable relief, specifically front pay damages pursuant to *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1528 (11th Cir. 1991).  In this case, Plaintiff is seeking two years' front pay.

**Compensatory Damages.**  Oliveira is also entitled to compensatory damages under Title VII and the Equal Protection Clause.  Oliveira seeks compensatory damages which are capped at $300,000 under Title VII for recompense for her emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.   She seeks compensatory damages against Defendant Wyatt under § 1983, which are uncapped.  Compensatory damages "may be inferred from the circumstances as well as proved by the testimony.  *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468 (11th Cir. 1999) (quoting *Gore v. Turner*, 563 F.2d

29

159, 164 (5th Cir. 1997).   A plaintiff need not prove a specific loss to recover general, compensatory damages, as opposed to actual or special damages. *Marable v. Walker*, 704 F.2d 1219 (1220-21) (11th Cir. 1983).   Further, a plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms. *See Carey v. Piphus*, 435 U.S. 247, 263-64 (1978).   The jury should not be informed of the statutory ceiling on compensatory damages. *Sasaki v. Class*, 92 F.2d 232, 236 (4th Cir. 1996) (42 U.S.C. § 1981a(c)(2) prohibits only the court from informing the jury of the caps, but "Congress clearly intended this restriction to prohibit anyone from bringing the caps to the jury's attention.").

**Punitive Damages.**   Oliveira is also entitled to punitive damages against Defendant Wyatt in his individual capacity under the Equal Protection claim pursuant to 42 U.S.C. § 1983.   Punitive damages can be assessed if the defendant is found to employ a "malice, willfulness or reckless disregard for plaintiff's federally protected rights." *Smith v. Wade*, 103 S. Ct. 1625 (1983).

**Liquidated Damages.** Oliveira is also entitled to liquidated damages under the FMLA.   29 U.S.C. §2617(a)(1)(A)(iii).   An award of liquidated damages equal to the amount of actual damages and interest must be awarded unless the employer "proves to the satisfaction of the court" that the acts or omissions giving rise to the

violation were in good faith and that the employer had reasonable grounds for believing that such acts or omissions did not violate the FMLA.

**Attorney's fees and costs.**  If Oliveira prevails, she will submit a post-trial petition for award of her reasonable attorney's fees and costs under 42 U.S.C. § 1988.  These continue to accrue.  Oliveira's attorney's fees are calculated as the number of hours each of her attorneys have spent on the case, consistent with billing judgment, times each attorney's hourly rate.  Oliveira will also seek an award of the expenses she and her counsel have incurred in connection with this case.  Oliveira's attorney's fees are approximately $115,000, and her costs are approximately $10,000.  Oliveira anticipates accruing an additional $50-75,000 in attorneys' fees and $10,000 in costs through trial.

**ATTACHMENT D**
**Defendants' Outline of the Case**

## I.  SEXUAL HARASSMENT AGAINST HORACE WYATT UNDER 42 U.S.C. § 1983.

Plaintiff alleges that she was subject to unwanted or unwelcomed sexual comments and harassment by her former supervisor, Horace Wyatt ("Mr. Wyatt"), from June 2010 to June 2011.   Plaintiff also alleges that prior to reporting to Mr. Wyatt in September 2010, her former supervisor, Cynthia Hinton, warned her about Mr. Wyatt's alleged treatment towards other female employees.

Prior to reporting to Mr. Wyatt in September 2010, Plaintiff willingly participated and even initiated inappropriate conversations with Mr. Wyatt.   In particular, Plaintiff requested Mr. Wyatt's assistance is rescheduling a hearing for her friend's brother. To show her appreciation, Plaintiff, along with her friend's brother, invited Mr. Wyatt to a free lunch where they engaged in a discussion regarding strip clubs and strippers.   After the lunch, Plaintiff continued to invite Mr. Wyatt to the strip club with her and her friend's brother.   Mr. Wyatt declined Plaintiff's offer.   Plaintiff also asked Mr. Wyatt for a ride home twice, and invited him to her sister's birthday party that was being held near Mr. Wyatt's home.

After reporting to Mr. Wyatt in September 2010, Plaintiff continued a friendly relationship with Mr. Wyatt that crossed the boundaries of supervisor/ employee relationship.  In documented emails between January 2011 and June 2011, Plaintiff expresses concern about Mr. Wyatt's well-being and health, encouraged Mr. Wyatt to text her personal cell phone, and shared private and personal information with Mr. Wyatt about her depression and desire for a mental health break. There are no witnesses or evidence to document Mr. Wyatt's alleged improper conduct towards Plaintiff.  Further, while Plaintiff recorded conversations with Mr. Wyatt, Plaintiff produced no recorded conversations of Mr. Wyatt making inappropriate comments.

On November 30, 2011, Plaintiff made a verbal complaint to the City of Atlanta ("City") Human Resources Coordinator, Tamika Franklin about alleged sexual harassment by Mr. Wyatt.  After the meeting, Plaintiff emailed Human Resources Manager, Nina Stephen, and stated that she was "back in a decent mental and physical health state at this time. My working relationship with my Manager is comfortable enough for me to be able to execute my current duties and responsibilities without stress and fear of retaliation." (Email from K. Oliviera to N. Stephen dated Nov. 30, 2011 at Bates-stamped No. COA-OLV000030Emails.)

Despite Plaintiff's Nov. 30, 2011 email, wherein she expressed reluctance to proceed with the investigation, the City took prompt and immediate action to address Plaintiff's complaints.  Human Resources repeatedly reached out to Plaintiff to encourage her to proceed with the investigation.  Human Resources also temporarily re-assigned Plaintiff to report to her former supervisor, Garrett Allen, and then to Ms. Stephen.

Human Resources received a written statement from Plaintiff on December 14, 2011. During an investigation conducted by the City's Human Resources Department, which included approximately eight (8) witness interviews and a review of multiple electronic communications, Plaintiff alleged that there was video footage of Mr. Wyatt's sexual harassment in the courtroom on May 5, 2011.  An extensive review of the CCTV footage has not revealed any inappropriate behavior by Mr. Wyatt.  The City's Human Resources Department did not substantiate Plaintiff's claims of sexual harassment.

## II.   RETALIATION AGAINST THE CITY UNDER TITLE VII.

After Judge Clinton Deveaux retired from Municipal Court, Plaintiff alleges that she complained to him, along with Christopher Patterson, Court Administrator/ Clerk of Court, who supervised Mr. Wyatt, in mid-June 2011.  In May 2011, Judge Deveaux informed Plaintiff that he would retire the following month.  Judge

34

Deveaux retired on June 8, 2011.  While Municipal Court Judges have the discretion to hire, fire or discipline their case managers, they cannot secure positions for their staff when they retire or separate from Municipal Court. Plaintiff was aware that she did not have a secure position after Judge Deveaux's retirement. Consistent with practice and procedure, Municipal Court had no obligation to offer Plaintiff a permanent position after Judge Deveaux's retirement.

When judges separate from Municipal Court, the long-standing procedure was to perform a reduction in force ("RIF") for the remaining case managers.  At times, case managers were retained as floaters to fill-in or cover other cases managers. When a new judge joins Municipal Court, the incoming judge may hire case managers or absorb floating case managers.

Municipal Court submits a yearly budget to Atlanta City Council, which sets the number of Municipal Court employees. The fiscal year commences July 1 and ends June 30 of the following calendar year.  Prior to City Council's approval of a new budget for the upcoming fiscal year, Municipal Court must justify all personnel costs, expenditures, requests, and changes to City Council.  In June 2011, Mr. Patterson, who was required to submit an annual budget to City Council by March 8, 2012, was concerned that someone would scrutinize the Municipal Court's budget and expect Judge Deveaux's former case managers to be RIF'ed, or the judges' staff

positions to be abolished entirely.  The Mayor did not appoint another judge to fill
Judge Deveaux's seat until the summer of 2012.

Since 2009, five (5) judges retired from Municipal Court.  Below is a chart
listing the retired judges and the employment status of their respective case managers
after the judge retired.

| Judge | Case Manager | Employment Status after Judge's Retirement and Number of Years of Courtroom Experience |
|---|---|---|
| **Judge Howard Johnson Retired 2009** | Andrew Reid | o Voluntary demotion, promoted back to Case Manager and assigned to special program and later became floater Case Manager<br>o 18 yrs experience |
| | Rick Hawkins | o Retired in lieu of being eliminated for budgetary reasons.<br>o 11 yrs experience |
| **Deborah S. Green Retired 2010** | Kitty Thomas | o Accepted a voluntary demotion as Clerk in Call Center.<br>o 10 yrs experience |
| | Phyllis White | o Demoted to Court Clerk Principal<br>o 21 yrs experience |
| **Judge Andrew Mickle Retired 2012** | Johnny Hudson | o Floater Case Manager<br>o 17 yrs experience |

|  |  |  |
|---|---|---|
|  | Angela Snipes | o Terminated before Judge Mickle's retirement due to budgetary constraints in 2008.<br>o 13 yrs experience |
|  | Derrick Kemp | o Terminated due to budgetary constraints, rehired as Case Manager for Judge Malicki, and then became Floater when Judge retired<br>o 7 yrs experience |
| **Judge Cathy Malicki Retired 2013** | Yolanda Peek | o Floater Case Manager<br>o 35 yrs experience |
|  | Darryl Kemp | o Rif'ed |
| **Judge Barbara Harris Retired July 2014** | Sheila Bragg | o Floater Case Manager<br>o 21 yrs experience |
|  | James Wilborn | o Retired |
|  | Tracey Sessions | o Floater Case Manager, and then hired by another judge<br>o 1 yr service with the Court, but 10 yrs prior courtroom experience |

At the time of Judge Deveaux's retirement, Plaintiff had 9 months of experience as a Case Manager in Community Court, which offered a nontraditional approach to sentencing for quality of life crimes.  Plaintiff was hired in January 2010 as an Intern for Municipal Court, and was subsequently hired as a Data Entry Clerk in April 2010. During Plaintiff's interview with Judge Deveaux, he advised her of his retirement plans, but Plaintiff stated that she still wanted the experience despite

the fact that she may be displaced after his retirement.  In September 2010, Plaintiff was hired as a Case Manager to Judge Deveaux.

Plaintiff had no prior experience working as a Case Manager, and after Judge Deveaux's retirement, her courtroom experience was limited to 9 months in a one area – Community Court.  Plaintiff had less experience than Bill Maddox, Judge Deveaux's second Case Manager, who had approximately 16 years of experience.

Municipal Court had no obligation to retain Judge Deveaux's case managers after he retired.  However, Mr. Patterson contemplated creating Quality Control positions for Plaintiff and Mr. Maddox.  The quality control positions were not created until City Council adopted the budget in 2015.  Mr. Patterson then assigned Plaintiff to address a traffic ticket backlog issue in the Data Entry Department, which was short staffed and faced numerous customer service complaints. In a recorded conversation between Plaintiff and Mr. Wyatt, Plaintiff objected to working on the traffic ticket backlog because she "did not go to college to owe money to enter tickets." (Recording No. KO-00948 ATT_1323722523012_Memo G.)   Plaintiff called the traffic ticket backlog a "dummy assignment." As such, Plaintiff failed to mitigate her damages after Judge Deveaux retired.

At that same time, Municipal Court faced a large backlog of DUI cases and, thus, created a special DUI court with Judge Graves and Judge Gaines, who presided

over the DUI court on Fridays.  The DUI court was referred to as the Fifth Calendar. Plaintiff was trained by case managers, Mike Dawson and Oscar Rosser, who worked for Judge Gaines in the DUI court on Fridays. Bill Maddox also worked on the DUI backlog, but he worked with Judge Graves, and Plaintiff worked with Judge Gaines.

Initially, Plaintiff expressed an interest and willingness to work on the DUI backlog calendar to avoid the traffic ticket backlog assignment.  Plaintiff's attitude on the new DUI assignment changed when she realized that she was directed by Judge Gaines to work every Friday, which interfered with her LSAT classes. Plaintiff also expressed frustration that she was required to work on Fridays, when, at that time, the standard docket for Municipal Court judges and their staff was Monday through Thursday.

Plaintiff had difficulty working in DUI Court.  First, Judge Gaines had a different management style from Judge Deveaux.  While Judge Deveaux put all of his case dispositions into the case management system, Judge Gaines expected case managers to perform the majority of functions on the case management system during a court proceeding.  Second, Plaintiff conflicted with Mr. Rosser, Judge Gaines' long-term clerk, which resulted in them arguing in open court in the presence of Judge Gaines.

During the budget discussions for fiscal year 2013, Chief Judge Gaines eliminated Plaintiff's floating case manager position because Plaintiff was not assigned to a specific judge, the DUI calendar had ended, and Judge Gaines could not justify using public funds to pay for a floating case manager. Plaintiff was terminated on April 26, 2012 "due to lack of work" effective May 10, 2012. Plaintiff received full pay and benefits until May 9, 2012.

### III.   FMLA Interference and Retaliation.

Approximately one (1) month after Judge Deveaux retired and Plaintiff's position became unsecured, Plaintiff suffered a mental health breakdown, and started receiving psychological treatment with Kaiser Behavioral Health. Plaintiff was diagnosed with Bipolar disorder with unstable mood, extreme irritability, agitation, anger, rage, depression, tearfulness, emotional inability, impaired coping, decreased impulse control, and decreased attention concentration. Plaintiff received monthly mental health treatment up to and including the time of her termination, and was also referred to Peachford Psychiatric Hospital for intensive outpatient psychotherapy for two weeks.

During the time period of Plaintiff's mental health treatment, Plaintiff made threatening and disparaging statements about her coworkers. Specifically, on April 3, 2012, Plaintiff had a conversation with Case Manager Bridget Johnson at work,

wherein she referred to the City's Law Department as "dirty," and stated that "she has been rape[d] over thousand times and that [she] will no longer allow a man to control her life again," and that she wishes Mr. Wyatt was dead.  (Email from N. Stephen to C. Patterson dated Apr. 3, 2012 and Employee Statement from B. Johnson dated Apr. 3, 2012 at Bates-stamped Nos. COA-OLV000289-290.) Plaintiff was placed on administrative leave with pay from April 9, 2012 to April 18, 2012 and instructed to undergo a mental health evaluation.

In an email dated February 1, 2012 to Ms. Stephen, Plaintiff accused an unidentified Judge and other unknown individuals of harassing and stalking her after she made complaints of sexual harassment against Mr. Wyatt.  Plaintiff stated as follows:

> I have been receiving threatening messages from a Judge that knows Horace.  I have been receiving phone calls from some female who hides her number, calling me horrible names including "snitch and ugly b*tch."  Someone has knocked on my middle of the night and run off before we can find out who it is.

(Email from K. Oliviera to N. Stephen dated Feb. 1, 2012 at Bates-stamped No. COA-OLV000045Emails.)

Similarly, in an email dated November 26, 2012 from Plaintiff to numerous individuals, Plaintiff made false and slanderous statements against various City

employees who participated in the investigation either as an Investigator – Kristie

Matthews, Esquire, or a witness as in the case of Clarence Griffin and Judge Gaines.

Plaintiff stated as follows:

> Kristie Matthews ... I simply have no words for you. I will never have
> words for you. I will never feel anything but sorrow for you because
> you honestly believe that due to the fact you have a law degree that is
> supposed to make you superior above others. So superior that you can
> basically threaten numerous employees not to righteously back me
> because they have pensions coming up or for other reason. I do not
> know how you even sleep at night. To think that you may actually be a
> parent is disturbing.

> Clarence Griffm ... WHO THE HECK ARE YOU? Like seriously, I
> believe we may have exchanged a few lines once or twice while
> working together. You made the statement that I am too pretty for my
> own good and probably have a big head .. that's how I remember who
> you are. You are male that is jealous of a female like me. Someone who
> looks like me must have hurt you very badly. Get over it. You lied in
> this report about ME??? I don't even KNOW YOU. No worries I can
> see the plot against me, shoot I saw it then.

> Crystal Gaines I have one question for you ... ok two questions for you.
> l) WHEN THE HELL DID YOU EVER MEET WITH ME IN
> PERSON OR BY PHONE TO DISCUSS WHAT WAS HAPPENING,
> TO DISCUSS MY DUTIES, AND TO DISCUSS HOW I WAS NOT
> WORKING UP TOP AR? Now you have to be the worst on list with
> Horace Wyatt. You know we have never had a meeting between us
> three. Actually I never met with you alone or with Horace EVER IN
> MY ENTIRE TIME AT AMC. How DARE YOU lie in this statement
> that my work performance was very bad and you stated this to me when
> you met with me. How DARE you WEAR A BLACK ROBE and
> LIEEEEEEEEE IN A COURT OF LAW!!!!!!!Let me guess you lost
> that video tape too. Ask yourself why I am so angry. ASK YOURSELF
> IF SOMEONE THAT WAS [LYING] WOULD BE WILLING TO

RISK HER ENTIRE LIFE AND CAREER DURING THE WORST ECONOMIC TIME????!! The answer is no but I will never lie on someone to cover up my own self. Think about that.

Email from K. Oliviera C. Patterson, *et al.*, dated Nov. 26, 2012, at Bates-stamped No. KO-00487-491.

In an email dated March 13, 2013, Plaintiff copied Mayor Reed and City Council, and stated as follows:

I FEEL LIKE PLAYING NOW. I AM IN THE MOOD SINCE I HAVEN'T SLEPT ALL NIGHT... YOU KNOW WITH THE ATTEMPT ON MY LIFE AND ALL ...

\*\*\*\*

Pig man (Horace) why don't you explain to the good people of this city where you were back on that summer evening in Aug 201 0? Explain to them how you showed up at Houston's restaurant - you know popped in on me and my "brother you call him" ... explain pig man ... I am sure everyone would like to know. I mean since my life may not be guaranteed for tomorrow tell' em tell' em tellllll'em pig man. Tell the good people of this city how your old school car ended up at that wonderful auto body shop for a few months.

\*\*\*\*

Let me explain pig man. They warned me about you IN HR when I started working: for your nasty behind. I told you I was smarter than you ... and please NOTE THAT EVEN IF THERE IS A SUCCESSFUL ATTEMPT ON MY LIFE NEXT TIME .... that recording and info aloooong with MANY MANY OTHER RECORDINGS I HAVE OF YOU DEPICTING THE CRAB PIG MAN YOU ARE WILL BE RELEASED TO ALL THE MEDIA NOT ONLY HERE ... BUT AROUND THE WORLD!

(Email K. Oliviera to C. Patterson, et al, dated Mar. 13, 2013 at Bates-stamped No. KO-00493.)

43

As a result of Plaintiff's mental health breakdown, Plaintiff had exhausted all of her available sick leave. As such, the City recommended that Plaintiff apply for FMLA leave. Plaintiff was granted FMLA leave from December 2011 to January 2012, and was granted intermittent FMLA leave thereafter. While on FMLA, Plaintiff's work was assigned to other employees for completion to adhere to Court timelines. Plaintiff has never been denied FMLA leave.

## IV.   DAMAGES

At the time of her termination in May 2012, Plaintiff was earning $31,806.45 per year ($2,650.53 per month). In December 2013, Plaintiff obtained a contract position for three (3) weeks and earned $680 per week. Plaintiff was unemployed from January 2014 to November 2014, but obtained a new position in November 2014 earning $4,000 more than her salary at the Court. Plaintiff also received unemployment compensation benefits for sixteen (16) months in the amount of $330 per month for a total of $5,280. Further, Plaintiff operated an online boutique, wherein she earned $5,000.

Plaintiff's total income from May 2012 to November 2014 was $79,516.04. Plaintiff's total wage loss minus the unemployment compensation and boutique operations was $69,236.04.

Plaintiff's counsel contends that Plaintiff's backpay is approximately $210,000 and  attorney's fees are $130,000.

### **Defendants' Relevant Rules, Regulations, Statutes and Case Law**

- The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

- *29 C.F.R.* § 825

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

- Equal Protection Clause

- *Brush v. Sears Holdings Corp*, 466 Fed.Appx. 781, 786 (11th Cir. 2012)

- *Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009)

- *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 2265,141 L. Ed. 2d 633 (1998)(" When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.")

- *Cooper v. Fulton Cnty., Ga*., 458 F.3d 1282, 1287-88 (11th Cir. 2006)(The award of liquidated damages is question for judge, not jury)

- *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) ("There also must be a causal link between the tangible employment action and the sexual harassment.")

- *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995)

- *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999) (noting that court is not concerned with whether employment decision was prudent or fair but only with whether it was motivated by unlawful discriminatory animus)

- *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("This decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department.")

- *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 530 F.3d 1023 (9th Cir. 2008)(no punitive damages under FMLA)

- *Frederick v. Sprint/United Mgmt. Co.,* 246 F.3d 1305, 1312 (11th Cir. 2001)

- *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999)(FMLA does not allow recovery for mental distress or the loss of job security)

- Griffin v. City of Opa-Locka, 261 F.3d 1295 (11th Cir. 2001) (no respondeat superior liability for gov't entity)

- *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000)

- *Harris v. Forklift Systems*, 510 U.S. 17 (1993) ("Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.")

- *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004)

- *Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F.3d 501 (11th Cir. 2000)

- *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993))

- *Latrece Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 865 (11th Cir. 2009)

- *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1248 (11th Cir.1999) (en banc)

- *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002)

- *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

- *O'Connor v. PCA Family Health Plan, Inc*., 200 F.3d 1349, 1357 (11th Cir. 2000) (employer can deny reinstatement following FMLA leave if it can demonstrate that it would have discharged the employee even if she had not been on FMLA leave.)

- *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

- *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998)

- *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1327 (N.D. Ga. 2005)

- Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) ("Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment; third, workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context; and fourth, a plaintiff can prove a hostile work environment by showing severe or pervasive discrimination directed against her protected group, even if she herself is not individually singled out in the offensive conduct.")

- *Schaaf v. Smithkline Beecham Corp*., 602 F.3d 1236 (11th Cir. 2010)(no liability if employer can show that its refusal to reinstate plaintiff was wholly unrelated to FMLA leave)

- *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1309-10 (11th Cir. 2011)

- *Strickland v. Water Works & Sewer Bd*., 239 F.3d 1199 (11th Cir. 2001)

- *University of Texas Southwestern Medical Center v. Nassar*, 2013 WL 3155234 (U.S. June 24, 2013)

- *Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997) (plaintiff must prove defendant's actions under color of state law)

- *Whiting v. Jackson State University*, 616 F.2d 116, 122 (5th Cir.1980) ("To establish a violation of the Equal Protection Clause, [plaintiff] must prove discriminatory motive or purpose")

**ATTACHMENT E**
**JOINT STIPULATION OF FACTS**

1. Plaintiff worked as an Intern at Municipal Court from January 2010 to April 2010.  (CAO-OLV0068)

2. As an Intern, Plaintiff was supervised by Garrett Allen, Director. (CAO-OLV0068)

3. Plaintiff was hired on April 29, 2010 as Court Clerk, Senior on April 29, 2010. (CAO-OLV0057)

4. As Court Clerk, Senior, Plaintiff reported to Cynthia Hilton.  (CAO-OLV0057)

5. As Court Clerk, Senior, Plaintiff earned $27,475.60.  (CAO-OLV0057)

**ATTACHMENT F**
**PLAINTIFF'S WITNESS LIST**

Plaintiff <u>will</u> have present at trial:

    Kelly Oliveira

Plaintiff <u>may</u> have present at trial:

    Horace Wyatt
    c/o Defendant

    Hon. Crystal Gaines
    c/o Defendant

    Hon. Clinton Deveaux

    Hon. Calvin Graves

    Chris Patterson

    Tamika Franklin

    Nina Stephen

    Bill Mattox

    Garrett Allen

    Andrew Reid

    Kristi Matthews

    Tadoral Bates

    DelMarie Griffin

    Crail Lewis

Ebony Huckabee

Tkeban Johannas

Regina Cannon

Ariana Silva (friend)

Patricia Nelida Feirreria

Latrice Rush

Samia Fields

Dr. Michael McLeod

Cynthia Hilton

Yolanda Banks

Hon. Andrew Mickle

Mike Dawson

Marsheila Parish

Carmen Depina

Rafael Cuello

Keith Oliveira

Plaintiff may also call witnesses necessary for impeachment and/or rebuttal testimony.

| | |
|---|---|
| Plaintiff  Kelly Oliveria<br><br>c/o Plaintiff's counsel | Plaintiff has knowledge of her employment and performance with Defendant City, the allegations in her Complaint, evidence of Defendant's discriminatory intent, her medical issues, request for medical leave and accommodation, and the circumstances surrounding her termination. |
| Defendant Horace Wyatt<br><br>c/o Defendant's counsel | Knowledge of Plaintiff's employment and performance with Defendant, his own harassing behavior, Plaintiff's medical leave and request for an accommodation, and the circumstances surrounding her termination. |
| Christopher Patterson<br><br>c/o Defendant's counsel | Knowledge of Plaintiff's performance with Defendant, Defendant Wyatt's harassment, Plaintiff's complaint of that harassment, Plaintiff's request for medical leave and medical issues, as well as the circumstances surrounding her termination. |
| Crystal Gaines<br><br>c/o Defendant's counsel | Knowledge of Plaintiff's employment and performance with Defendant, Plaintiff's medical leave and request for an accommodation, and the circumstances surrounding her termination. |

| | |
|---|---|
| Nina Stephen | Knowledge of Plaintiff's employment and performance with Defendant, Plaintiff's medical leave and request for an accommodation, and the circumstances surrounding her termination. |
| Judge Clinton Deveaux | Knowledge of Plaintiff's employment and performance with Defendant, Wyatt's harassment of Plaintiff, Plaintiff's complaint of harassment, and Plaintiff's emotional distress. |
| William Mattox | Knowledge of Plaintiff's employment and performance, Wyatt's harassment of Plaintiff and other women, Plaintiff's complaint of harassment, and Plaintiff's emotional distress. |
| Crail Lewis (Courtroom Supervising Public Defender for Judge Clinton Deveaux) | Knowledge of Plaintiff's employment and performance and Wyatt's treatment of Plaintiff and other female employees, Plaintiff's complaint of harassment, and Plaintiff's emotional distress. |
| Tamika Franklin (HR Generalist) | Knowledge of Defendant Wyatt's harassment of Plaintiff and other women in the workplace, and Plaintiff's report of the harassment. |
| Garrett Allen (Director of Community Courts Division) | Knowledge of Plaintiff's employment and performance and Wyatt's treatment of Plaintiff and other women in the workplace. |
| DelMarie Griffin (Female Prosecuting Attorney in DUI court for Judge Graves) | Knowledgeable of the Defendants' mistreatment towards female employees and Plaintiff's employment. |

| | |
|---|---|
| Andrew Reid | Knowledge of Plaintiff's employment and performance and Wyatt's treatment of Plaintiff and other women in the workplace. |
| Kristi Matthews | Knowledge of the investigation into Plaintiff's complaint. |
| Tadoral Bates | Knowledge of Plaintiff's complaint of sexual harassment and requests for medical leave. |
| Ebony Huckabee | Knowledge of Wyatt's behavior to women in the workplace and of Plaintiff's emotional distress. |
| Tkeban Johannas | Knowledge of Plaintiff's sexual harassment complaint and Plaintiff's emotional distress. |
| Regina Cannon | Knowledge of Wyatt's behavior to women in the workplace and of Plaintiff's emotional distress. |
| Ariana Silva | Knowledge of Plaintiff's emotional distress due to Defendants' actions. |
| Patricia Nelida Feirreria | Knowledge of Plaintiff's emotional distress due to Defendants' actions. |
| Latrice Rush | Knowledge of Plaintiff's emotional distress due to Defendants' actions. |
| Samia Fields | Knowledge of Wyatt's behavior to women in the workplace and of Plaintiff's emotional distress. |
| Michael McLeod, MD | Knowledge of Plaintiff's emotional distress due to Defendants' actions. |
| Cynthia Hilton | Knowledge of Wyatt's behavior to women in the workplace and of Plaintiff's emotional distress. |

| Yolanda Banks | Knowledge of employment opportunities for Plaintiff after her complaint. |
|---|---|
| Hon. Andrew Mickle | Knowledge of Plaintiff's work performance. |
| Mike Dawson | Knowledge of Plaintiff's work performance. |
| Marsheila Parish | Knowledge of Wyatt's behavior to women in the workplace and of Plaintiff's emotional distress. |
| Carmen Depina | Knowledge of Plaintiff's emotional distress caused by Defendants. |
| Rafael Cuello | Knowledge of Plaintiff's emotional distress caused by Defendants. |
| Keith Oliveira | Knowledge of Plaintiff's emotional distress caused by Defendants. |

**ATTACHMENT F-1**
**DEFENDANTS' WITNESS LIST**

Defendants will present the following witnesses at trial:
1) Kelly Oliveira
2) Horace Wyatt
3) Christopher Patterson
4) Nina Stephens
5) Judge Crystal Gaines
6) Kristi Matthews

Defendants may present the following witnesses at trial:

1. Judge Calvin Graves
2. Tamika Franklin
3. Ryan Shepard
4. Yolanda Peek
5. Oscar Rosser
6. Mike Dawson
7. Bridget Johnson
8. TaDarol Bates
9. Dr. Michael McLeod
10. Records Custodian from Kaiser Permanente

**Summary of Testimony:**

1. Kelly Oliveira – Plaintiff will testify about her claims against the Defendants.

2. Horace Wyatt – Mr. Wyatt will testify in defense of Ms. Oliveira's allegations against him and Plaintiff's work assignments.

3. Christopher Patterson – Mr. Patterson will testify about Plaintiff's work assignment after Judge Clinton Deveaux's retirement; Municipal Court's policy and procedure regarding the employment status of case managers after their judge retires; City Council's approval of the Municipal Court budget and

positions; supervision and role of Mr. Wyatt; Plaintiff's complaints about Mr. Wyatt.

4. Nina Stephens – Ms. Stephens will testify about the City's investigation of Plaintiff's sexual harassment allegations, requests for FMLA leave, and work assignments.

5. Judge Crystal Gaines – Judge Gaines will testify about Plaintiff's work assignment as it relates to the DUI calendar, Municipal Court policies, procedure and administration, and Plaintiff's termination.

6. Kristi Matthews – Ms. Matthews will testify about the City's investigation of Plaintiff's sexual harassment allegations and response to the EEOC.  Ms. Matthews will also testify about Plaintiff's placement on administrative leave, requests for FMLA leave, and work assignments.

7. Judge Calvin Graves – Judge Graves will testify about Plaintiff's work assignment as it relates to the DUI calendar.

8. Oscar Rosser – Mr. Rosser will testify about Plaintiff's work assignment as it relates to the DUI calendar and Plaintiff's performance and attitude.

9. Tamika Franklin – Ms. Franklin will testify about Plaintiff's complaints of alleged sexual harassment.

10. Ryan Shepard  - Mr. Shepard will serve as the City's corporate designee and will testify about the Municipal Court's policies and procedures.

11. Yolanda Peek – Ms. Peek will testify about a work place conflict involving Ms. Oliveira.

12. Mike Dawson – Mr. Dawson will testify about training Plaintiff to work on the DUI calendar.

13. Bridget Johnson – Ms. Johnson will testify about a conversation with Plaintiff on April 3, 2012 that resulted in Plaintiff being placed on administrative leave, and Plaintiff's working relationship with other case managers.

14. TaDarol Bates – Mr. Bates will testify about the City's FMLA leave policies and procedures, and Plaintiff's request and approval for FMLA leave.

15. Dr. Michael McLeod – Dr. McLeod is expected to testify about Plaintiff's treatment, diagnosis and reasons for FMLA leave.

16. Records Custodian from Kaiser Permanente – The Custodian will testify about Plaintiff's medical treatment and diagnosis.

**ATTACHMENT G-1**
**Plaintiff's Exhibit List**

Plaintiff reserves the right to use any document necessary for rebuttal or impeachment purposes. Plaintiff also reserves the right to amend this exhibit list to include documents produced by Defendants after the filing of this pre-trial order. Finally, Plaintiff further reserves the right to supplement or amend this list of proposed exhibits no later than fourteen (14) days in advance of the date for which this case appears on the trial calendar.

| Date | Bates # | Description |
|---|---|---|
| 2005 | KO - 00457 - 459 | COA Case Manager Classification Specification |
| 2009 | COA-OLV000902 - 915 | List of employees involved in budget process |
| 2010 | COA-KVO000056-COA-KVO000057 | 2010 KO resume |
| 1997.07.15 | COA-KVO000783 | Wyatt Certificate of Completion Sexual Harassment in the Work Place Seminar |
| 2003.06.23 | KO - 00740 - 745 | COA FMLA Policy |
| 2007.03.27 | COA-KVO000466-473 | City of Atlanta Ordinance No. 2007-22(06-O-2700), Section 1, Sexual Harassment |
| 2010.04.15 | COA-KVO00043 | 2010.04.15 Offer of Employment letter |
| 2010.05.10 | COA-KVO000079 | 2010.05.10 memo re criminal background and approval |
| 2010.05.10 | COA-KVO000145- | 2010.05.10 Performance Evaluation |

| | COA-KVO000148 | |
|---|---|---|
| 2010.06.04 | COA-KVO000099 | 2010.06.04 Personnel Transaction Authorization Form |
| 2010.09.18 | COA-KVO000097 | 2010.09.18 HR Emp Maintenance Turnaround Doc (TAD) |
| 2010.11.01 | COA-KVO000440-465 | City of Atlanta Employee Handbook |
| 2010.11.16 | KO - 00227 | Email recall |
| 2010.12.15 | COA-KVO000219-COA-KVO000220 | 2010.12.15 Email re Wyatt reprimand of KO for sending email re courtroom assignment issues |
| 2010.12.15 | KO - 00260 | Email re Touching Base_Resetting Cases |
| 2011.02.09 | COA-KVO000223 | 2011.02.09 EM KO to Wyatt Deveaux and Mattox re IT privileges re add tickets to system |
| 2011.02.10 | KO - 00221 | 2011.02.10 Email Wyatt and KO re Stop By |
| 2011.03.08 | COA-KVO000722 | Letter:  Gaines to Patterson - Offer of Employment |
| 2011.03.28 | KO - 00244 - 245 | Email re KO Emotional State |
| 2011.04.20 | COA-KVO001015 | 2011.04.20 Email from KO to NS and HW re incident with Yolanda |
| 2011.05.06 | COA-KVO000951 | 2011.05.06 Observation notes from video arraignment court session with Judge Deveaux |
| 2011.05.26 | COA-KVO000149-155 | Performance Evaluation Oliveira |
| 2011.06.15 | KO001002 | Email:  Oliveira to Deveaux re Request for Assistance |
| 2011.06.16 | COA-KVO001214 | Email:  Oliveira to Wyatt et al re duties |
| 2011.06.16 | KO - 00228 - 229 | Email:  Judge Mickle Comment |

| | | |
|---|---|---|
| 2011.06.16 | COA-KVO000904-COA-KVO000909 | 2011.06.16 KO's synopsis of her dealings with H Wyatt |
| 2011.06.21 | KO - 00916-917 | Email with Judge Deveaux re Federal Opportunity |
| 2011.06.22 | KO001097-1098 | Email: Patterson and Oliveira re Wyatt Issues and Assignment |
| 2011.06.22 | COA-KVO000260 | 2011.06.22 Email to Chris re First Appearance and Preliminary Hearings at MCA |
| 2011.06.23 | KO - 00928 | Email re KO Out Sick |
| 2011.06.24 | KO001089-1091, 1003 | Email:  Oliveira and Deveaux re Wyatt Issues |
| 2011.06.24 | KO - 00249 | Email:  Oliveira to Wyatt re communication |
| 2011.08.29 | KO - 00923 - 924 | Email:  Wyatt asking Oliveira to Come By His Office |
| 2011.08.29 | COA-KVO000241 - 245 | Email:  Wyatt and Oliveira re 5th DUI Calendar |
| 2011.08.29 | KO - 00250 | Email:  KO and Wyatt re 5th DUI Calendar |
| 2011.08.29 | KO - 00251 | Email:  Wyatt and Oliveira re 5th DUI Calendar |
| 2011.08.29 | KO - 00252 | Email:  KO and Wyatt re 5th DUI Calendar |
| 2011.08.29 | KO - 00253-255 | Email:  KO and Wyatt re 5th DUI Calendar |
| 2011.08.29 | KO - 00919 - 920 | Email DUI Calendar |
| 2011.08.29 | KO - 00921 | Email re Time Issues |
| 2011.09.08 | KO - 00235 | Email: Time Card |
| 2011.09.09 | COA-KVO001218-COA-KVO001219 | 2011.09.09 Emails btw N Stephen and KO re off days |
| 2011.09.15 | COA-KVO001411 | 2011.09.15 Email KO to NS re documenting scheduling for 5th calendar |

| | | |
|---|---|---|
| 2011.09.29 | KO - 00233 – 234 | Email:  Thanks for Help with DUI Docket |
| 2011.10.14 | COA-KVO001178 - 1179 | Email:  Wyatt and Oliveira re Oliveira Request for Meeting |
| 2011.10.18 | COA-KVO00011 | 2011.10.18 Email KO to T Franklin re timecard adjustments |
| 2011.10.18 | KO - 00935 - 938 | Email requesting meeting with Wyatt and Chris |
| 2011.10.18 | KO - 00237 - 240 | Email KO requesting meeting |
| 2011.10.21 | COA-KVO001177-COA-KVO001179 | 2011.10.11 Emails re KO frustration in setting up mtg with HW |
| 2011.10.21 | COA-KVO000257-COA-KVO000258 | 2011.10.21 Email btw Wyatt and KO re meeting with Chris |
| 2011.10.21 | COA-KVO000255-COA-KVO000256 | 2011.10.21 Email btw Wyatt and KO re scheduling |
| 2011.10.22 | COA-KVO001420-COA-KVO001423 | 2011.10.21 Forwarded email from HW to NS re KO request for meeting |
| 2011.10.25 | COA-KVO001203 | 2011.10.25 Meeting notes Chris P and H Wyatt re KO |
| 2011.10.27 | COA-KVO001180 | Email:  Wyatt to Stephen "Guess Who Is Here" |
| 2011.10.31 | KO - 00264 | Email:  Case Manager Things to Do List for the DUI Calendars |
| 2011.11.02 | COA-KVO001020 - 1021 | Email:  Oliveira Wyatt and Stephen re Training |

| | | |
|---|---|---|
| 2011.11.17 | COA-KVO000224-COA-KVO000226 | 2011.11.17 Email KO re issues with Wyatt Its Working Out |
| 2011.11.30 | COA-KVO001206 | Notes:  Recording of discussions re Franklin report of Oliveira concerns of sexual harassment |
| 2011.11.30 | COA-KVO001097 | Notes:  Summary of allegations as related by KVO on 11/30/2011 |
| 2011.11.30 | COA-KVO000800 - 801 | Notes:  Notes from meeting with KVO and timeline of subsequent actions, including notice to Wyatt |
| 2011.11.30 | KO000992 | Email:  Stephen to Oliveira re Temporary Assignment to G. Allen |
| 2011.11.30 | COA-KVO001098 | Memo:  Franklin Report of Oliveira Harassment |
| 2011.11.30 | CPA-KVO001099 | Franklin Authored Meeting Recap |
| 2011.11.30 | COA-KVO000894-COA-KVO000895 | 2011.11.30 Email from KO to N Stephen re 5th Calendar |
| 2011.11.30 | COA-KVO000943-COA-KVO0000945 | 2011.11.30 Email stating that KO will no longer cooperate with investigation |
| 2011.11.30 | COA-KVO000936 | 2011.11.30 follow up notes re  mtg w KO |
| 2011.11.30 | COA-KVO000923 | 2011.11.30 Memo to H Wyatt re Complaint of Sexual Harassment |
| 2011.11.30 | COA-KVO001206 | 2011.11.30 Notes re conversation with T Franklin |
| 2011.11.30 | KO - 00756 - 760 | Stephen Notes re meeting with KO |
| 2011.11.30 | KO - 00762 | Email re Touching base HR meeting called from earlier |
| 2011.11.30 | KO - 00763 | Email re Temporary Assignment |

| | | |
|---|---|---|
| 2011.12.01 | COA-KVO000897 | Email re New Assignment |
| 2011.12.01 | COA-KVO001192 | 2011.12.01 Email NS to C Graves Kelly will work with you tomorrow |
| 2011.12.01 | COA-KVO001205 | 2011.12.01 Mtg notes Judge Gaines, Graves, Wyatt, Stephen |
| 2011.12.01 | COA-KVO001159 | Notes:  Graves assignment of DUI 5th Calendar to Dawson |
| 2011.12.06 | COA-KVO000903 | Notes: Gaines and Stephen investigation strategy |
| 2011.12.12 | COA-KVO000939 - 940 | Notes: Meeting with KVO, concerns about retaliation |
| 2011.12.12 | COA-KVO001010 | Emails:  Questionnaire and KVO following up with investigation |
| 2011.12.12 | COA-KVO001267 | 2011.12.12 Email btw NS and KO re investigation questionnaire |
| 2011.12.12 | COA-KVO001264-COA-KVO001266 | 2011.12.12 Emails btw KO and NS re Thanksgiving Vacation request |
| 2011.12.12 | COA-KVO000939-COA-KVO000940 | 2011.12.12 Notes from Meeting with KO |
| 2011.12.13 | COA-KVO001268 | 2011.12.13 Email btw KO and NS re Mike will be by to pick up 1994-2004 cases |
| 2011.12.13 | COA-KVO001269-COA-KVO001271 | 2011.12.13 Emails btw KO and NS re payroll issues |
| 2011.12.14 | KO - 00461 - 466 | KO Written Complaint |
| 2011.12.19 | COA-KVO001275 | 2011.12.19 Email btw KO and NS re Closing Out PTIT Cases |
| 2011.12.19 | KO - 00932 | Email with Deveaux re KO resume |

| | | |
|---|---|---|
| 2011.12.20 | COA-KVO000997 | Email:  City Sexual Harassment Policy |
| 2011.12.20 | COA-KVO000885 - 887 | Notes:  Follow Up Questions and KVO response |
| 2011.12.20 | COA-KVO000888 - 889 | 2011.12.20 Follow up questions to KO after receipt of complaint - marked CONFIDENTIAL |
| 2011.12.20 | KO - 00807 - 809 | Stephen Notes re Follow Up Questions for KO |
| 2011.12.21 | COA-KVO000924 | Memo:  Wyatt Official Notice of Sexual Harassment and Retaliation Complaint |
| 2011.12.28 | KO - 00910 - 911 | Email re KO in MC Case Managers Distribution List |
| 2012.01.04 | COA-KVO001155 | Notes:  Dawson discussion and KVO assignments |
| 2012.01.08 | KO - 00319 | Letter re Leave Time Exhaustion |
| 2012.01.10 | COA-KVO001157 | Email:  Vanessa Oliveira to Stephen re KVO medical issues and chronic anxiety and undisclosed medical issue |
| 2012.01.12 | COA-KVO001158-COA-KVO001159 | 2012.01.12 and 2011.12.01 NS notes re Kelly return and situation with M Dawson |
| 2012.01.18 | COA-KVO000171-COA-KVO000179 | 2012.01.18 LTR re Leave time exhaustion |
| 2012.01.18 | COA-KVO001237-COA-KVO001238 | 2012.01.18 Email N Stephen to KO re DUI FTA Warrant Program |
| 2012.01.18 | COA-KVO000225-COA-KVO000228 | 2012.01.18 MEMO re FMLA fr. N Stephen |

| | | |
|---|---|---|
| 2012.01.24 | COA-KVO001145 - 1151 | Witness Interview Notes (Patterson and Deveaux) |
| 2012.01.24 | KO001087-1088 | Notes from Judge Deveaux Interview |
| 2012.01.24 | KO001107-1108 | Notes from Bill Mattox Interview |
| 2012.01.24 | COA-KVO001239-COA-KVO001240 | 2012.01.24 Emails btw NS and KO re hours and progress w FTAs |
| 2012.01.25 | COA-KVO001243 | Email:  Oliveira to Stephen, Mattox and Dawson re DUI case processing issues (FTAs) |
| 2012.01.25 | KO - 00930 | Email:  Wyatt and Oliveira re Judge Mickle Comment and Wyatt meeting |
| 2012.01.25 | KO - 00927 | Email:  Wyatt to Oliveira Come Down to My Office |
| 2012.01.25 | COA-KVO001245-COA-KVO001246 | 2012.01.25 Email btw KO and NS re FTA - DUI Assignment 2 |
| 2012.01.25 | COA-KVO001241-1242 | 2012.01.25 Emails btw NS and KO re same |
| 2012.01.30 | COA-KVO000937 - 938 | Notes:  Stephen meeting with Judge Gaines re Oliveira Investigation and Concern of Conflict of Interest |
| 2012.01.31 | COA-KVO001250 - 1251 | Email:  Oliveira to Stephen re evaluation, Wyatt a contributor in evaluation and dispute process |
| 2012.01.31 | COA-KVO001252 | Email:  Oliveira to Stephen re FTAs and request for status of investigation |
| 2012.01.31 | COA-KVO001250-COA-KVO001251 | 2012.01.31 Email btw KO and NS re PP3 Leave Use |

| | | |
|---|---|---|
| 2012.01.31 | COA-KVO000933-COA-KVO000935 | 2012.01.31 Memo to K Matthews re sexual harassment investigation |
| 2012.02.01 | COA-KVO001278 | Email:  Oliveira and Stephen re KVO harassment |
| 2012.02.01 | COA-KVO00001101 | 2012.02.01 Email btw KO and N Stephen re disturbing incidents |
| 2012.02.02 | COA-KVO000932 | Notes:  Meeting with Wyatt |
| 2012.02.02 | COA-KVO001280 | Email:  Oliveira to Stephen re Wyatt obtaining KVO Statement, Requesting Wyatt and Patterson Statements |
| 2012.02.02 | COA-KVO000893 | Email:  Stephen to Matthews Follow Up, EAP referral, FMLA Leave |
| 2012.02.02 | COA-KVO001454 | 2012.02.02 Email from NS to K Matthews re follow up to Meeting with KO |
| 2012.02.02 | COA-KVO001281-COA-KVO001284 | 2012.02.02 Email NS to KO re FTA Warrant procedures |
| 2012.02.02 | COA-KVO001286 | 2012.02.02 Email re scanner installation |
| 2012.02.03 | COA-KVO000216 | 2012.02.03 FMLA Request Form |
| 2012.02.03 | COA-KVO000111 | 2012.02.03 HR Emp Maintenance Turnaround Doc (TAD) p. 1 |
| 2012.02.03 | COA-KVO000112 | 2012.02.03 HR Emp Maintenance Turnaround Doc (TAD) p. 2 |
| 2012.02.14 | COA-KVO000212 | 2012.02.14 LTR re FMLA approval |
| 2012.02.16 | COA-KVO001295-COA-KVO001296 | 2012.02.16 Email btw NS and KO re Advance Sick Leave Use |
| 2012.03.06 | COA-KVO001301 | 2012.03.06 Email confirmation of fax sent by KO's sister re Doctor note |

| | | |
|---|---|---|
| 2012.03.07 | COA-KVO001304-COA-KVO001305 | 2012.03.07 Emails re Fax FMLA confirmation |
| 2012.03.12 | COA-KVO000262 | 2012.03.12 Email btw N Stephens and C Patterson re Kelly's return to work |
| 2012.03.12 | COA-KVO000261 | 2012.03.12 Email btw N Stephens and C Patterson re KO FMLA scheduling issues |
| 2012.03.20 | COA-KVO000934 - 935 | Notes:  Conversation with Kristi Matthews re Oliveira Investigation |
| 2012.03.22 | COA-KVO001329-COA-KVO001330 | 2012.03.22 PTO Accrual statement |
| 2012.03.26 | COA-KVO001139 - 1141 | Interview Notes:  Ronda Graham |
| 2012.03.26 | COA-KVO000890 | 2012.03.26 Email Stephen to Wyatt re confidential document |
| 2012.03.26 | COA-KVO000927 | 2012.03.26 N Stephen's comment on memo to Wyatt |
| 2012.03.28 | COA-KVO000263-COA-KVO000264 | 2012.03.28 Email btw NS and CP re KO return to work |
| 2012.03.28 | COA-KVO001311-COA-KVO001312 | 2012.03.28 Emails re KO AFLAC question |
| 2012.04.02 | COA-KVO001160 | Memo:  Stephen Notes of Kelly Investigation and Future with COA |
| 2012.04.02 | COA-KVO001161 - 1163 | Notes:  Meeting with Oliveira after Return from FMLA |
| 2012.04.02 | COA-KVO000113 | 2012.04.02 HR Emp Maintenance Turnaround Doc (TAD) p. 1 |

| 2012.04.02 | COA-KVO000114 | 2012.04.02 HR Emp Maintenance Turnaround Doc (TAD) p. 2 |
|---|---|---|
| 2012.04.02 | COA-KVO001161-COA-KVO001163 | 2012.04.02 HR Emp Maintenance Turnaround Doc (TAD) p. 2 |
| 2012.04.02 | KO - 00469 | Turn Around Document |
| 2012.04.02 | KO - 00571 | Turn Around Document |
| 2012.04.03 | COA-KVO000265-267 | Email:  Stephen to Patterson re Oliveira Administrative Leave and Johnson Statement |
| 2012.04.03 | KO - 00195 | Oliveira EEOC Charge of Discrimination |
| 2012.04.03 | COA-KVO001510 | 2012.04.03 EEOC charge |
| 2012.04.03 | COA-KVO000896 | 2012.04.03 Email from N Stephen to K Matthews re scheduled meeting with KO |
| 2012.04.03 | KO - 00894 | Email Requesting Copy of Wyatt Statement |
| 2012.04.04 | COA-KVO001113 | Email:  Stephen to Matthews re Oliveira Update |
| 2012.04.04 | COA-KVO001113 | 2012.04.04 Email NS to KM re update on KO re absences |
| 2012.04.04 | COA-KVO001116-COA-KVO001118 | 2012.04.04 Meeting notes re KO's retaliation allegations |
| 2012.04.05 | COA-KVO000162-169 | Performance Evaluation Oliveira (9/16/2010 - 6/30/2011) |
| 2012.04.05 | COA-KVO000792 - 799 | Interview Notes:  Wyatt |
| 2012.04.05 | COA-KVO000998-COA-KVO000999 | 2012.04.05 Email fr KO to N Stephen re April 4 mtg with K Matthews |
| 2012.04.05 | COA-KVO001000 | 2012.04.05 Email from K Matthews to KO re April 4 mtg |

| | | |
|---|---|---|
| 2012.04.05 | COA-KVO001333-COA-KVO001334 | 2012.04.05 KO Response to NS email re missing April 4 meeting with K Matthews |
| 2012.04.05 | COA-KVO001201 | 2012.04.05 LTR to KO fr Judge Gaines re Admin Leave |
| 2012.04.05 | KO - 00479 - 482 | Performance Evaluation |
| 2012.04.06 | COA-KVO001341-1343 | Email:  Oliveira to City Employees, EEOC re concerns |
| 2012.04.06 | COA-KVO001193 | Letter: Patterson to Mitchell Requesting Return to Work Evaluation |
| 2012.04.06 | KO - 00484 - 485 | Email from KO re return to work |
| 2012.04.06 | KO - 00890 - 891 | Email KO to Matthews and Stephen re Return to Work |
| 2012.04.06 | KO - 001095 - 1096 | Interview Notes Patterson |
| 2012.04.06 | KO - 468 | Letter re Status of Medical Leave |
| 2012.04.09 | COA-KVO001511 | 2012.04.09 EEOC LTR to N Stephens designating charge |
| 2012.04.09 | COA-KVO0268-0269 | 2012.04.09 Email from K Matthews to N Stephens re KO's administrative leave |
| 2012.04.09 | COA-KVO001346-COA-KVO001348 | 2012.04.09 Email KO to NS post therapy visit |
| 2012.04.09 | COA-KVO001164 | 2012.04.09 Notes from meeting with KO, K Matthews and D Mitchell |
| 2012.04.09 | KO - 00470 | Turn Around Document |
| 2012.04.09 | KO - 00884 - 886 | Email with Cannon re Meeting with COA |
| 2012.04.10 | COA-KVO000789-790 | Statement:  Stephen re Oliveira Absence and Decision to Terminate |

| | | |
|---|---|---|
| 2012.04.10 | COA-KVO001006 | 2012.04.10 Email btw N Stephen and Y Banks re KO absence |
| 2012.04.10 | COA-KVO000789-0COA-KVO000790 | 2012.04.10 Memo re KO |
| 2012.04.10 | KO - 00881 - 883 | Email to Judge Deveaux re Work Issues |
| 2012.04.11 | COA-KVO000197-COA-KVO000202 | 2012.04.11 FMLA Request Form |
| 2012.04.11 | KO - 00471 | Turn Around Document |
| 2012.04.12 | KO001095-1096 | Notes from Chris Patterson Interview |
| 2012.04.13 | COA-KVO000197 | FMLA Request Form |
| 2012.04.13 | COA-KVO000198 - 202 | Physician Completed FMLA Documentation |
| 2012.04.13 | COA-KVO0000265-COA-KVO0000267 | 2012.04.13 Email re Statement from B Johnson re conversation with KO 4.3.12 |
| 2012.04.13 | KO - 00473 | Return to Work Release |
| 2012.04.16 | COA-KVO000118 | 2012.04.16 HR Emp Maintenance Turnaround Doc (TAD) |
| 2012.04.16 | KO - 00468 | Letter re admin leave |
| 2012.04.16 | KO - 00321 | Turn Around Document |
| 2012.04.17 | COA-KVO001131-1134 | Notes from Judge Deveaux Interview (unsigned); see Ex. 73 |
| 2012.04.17 | COA-KVO001122 - 1126 | Interview Notes:  Bill Mattox |

| | COA- | |
|---|---|---|
| 2012.04.17 | KVO001119 - 1121 | Interview Notes: Andrew Reid |
| 2012.04.17 | KO001083-1086 | Notes from Judge Deveaux Interview |
| 2012.04.17 | KO001118-1120 | Notes from Andrew Reid Interview |
| 2012.04.17 | KO001102-1106 | Notes from Bill Mattox Interview |
| 2012.04.19 | COA-KVO000120 - 122 | 2012.04.19 HR Emp Maintenance Turnaround Doc (TAD) complete |
| 2012.04.19 | KO - 00322 | Turn Around Document - |
| 2012.04.23 | COA-KVO001136 - 1138 | Interview Notes: Garrett Allen |
| 2012.04.23 | COA-KVO001127 - 1128 | Interview Notes: Judge Calvin Graves |
| 2012.04.23 | KO001110 - 1112 | Notes from Garrett Allen Interview |
| 2012.04.25 | COA-KVO000193 | 2012.04.25 HR Emp Maintenance Turnaround Doc (TAD) |
| 2012.04.25 | KO - 00472 | Turn Around Document |
| 2012.04.25 | KO - 00574 | Turn Around Document |
| 2012.04.25 | KO - 00871 | Email KO and Stephen re KO return to work issues |
| 2012.04.25 | KO - 00877 | Email Atty Solomon re KO return to work and meeting |
| 2012.04.26 | COA-KVO000128 | Letter: Gaines to Oliveira re Termination |
| 2012.04.26 | COA-KVO000181- COA-KVO0000182 | 2012.04.26 Employee Earnings Statement |

| | | |
|---|---|---|
| 2012.04.26 | COA-KVO000125 | 2012.04.26 HR Emp Maintenance Turnaround Doc (TAD) complete - revised 5.10.12 |
| 2012.04.26 | KO - 00323 | Turn Around Document |
| 2012.04.26 | COA-KVO000128 | Letter terminating KO |
| 2012.04.26 | KO - 00477 | Separation Notice |
| 2012.05.02 | COA-KVO000922 | Email from Tricia Solomon re Oliveira Return to Work |
| 2012.05.02 | COA-KVO000139 | 2012.05.02 PTO Accrual |
| 2012.05.09 | COA-KVO001051 - 1079 | Notes in re Employer Position Statement |
| 2012.05.09 | COA-KVO001165 | 2012.05.09 Notes re discussion return of personal items |
| 2012.05.10 | COA-KVO000133 | 2012.05.10 HR Emp Maintenance Turnaround Doc (TAD) p. 1 |
| 2012.05.10 | COA-KVO000134 | 2012.05.10 HR Emp Maintenance Turnaround Doc (TAD) p. 2 |
| 2012.05.10 | KO - 00474 | Turn Around Document |
| 2012.05.10 | KO - 00475 | Turn Around Document |
| 2012.05.11 | COA-KVO000192 | Letter re FMLA |
| 2012.05.11 | KO - 00869-870 | Email KO state of mind post termination |
| 2012.05.14 | COA-KVO000140-COA-KVO000141 | 2012.05.14 Separation and Clearance Form |
| 2012.05.16 | COA-KVO000313 - 319 | Internal Investigative Report:  Mariana Allen re Horace Wyatt |
| 2012.05.17 | COA-KVO000311-312 | Discrimination Complaint Questionnaire Completed by Franklin |

| | | |
|---|---|---|
| 2012.05.30 | COA-KVO000279 - 285 | Internal Investigative Report:  Oliveira re Horace Wyatt |
| 2012.05.31 | COA-KVO000791 | 2012.05.31 Memo re adding Graves' statement |
| 2012.06.21 | KO - 00486 | Email from KO re pension fund application |
| 2012.07.05 | COA-KVO000730 | Letter:  Patterson to Wyatt - Suspension for Sexual Harassment |
| 2012.10.18 | COA-KVO001049 | Notes in re Response to EEOC Request for Information |
| 2012.10.18 | KO - 00483 | Partial Response to EEOC Request for More Info |
| 2012.11.26 | KO - 00487 - 491 | Email from KO re fighting for injustice |
| 2013.03.08 | KO - 00012 - 13 | EEOC Determination |
| 2013.03.11 | KO - 00492 - 498 | Email from KO re W2 and Sexual Harassment File Request |
| 2013.03.12 | KO - 00939 - 941 | Email re Sexual Harassment Investigative File Request |
| 2013.05.03 | KO - 00014 - 17 | 2013.05.03 Letter COA to EEOC re refusal to conciliate |
| 2013.05.11 | COA-KVO000192 | 2013.05.11 LTR re FMLA approval |
| 2015.06.16 | COA-OLV000001-2 | Oliveira response, docs and emails, produced to Plaintiff |
| Undated | COA-KVO000156-161 | Performance Evaluation Oliveira |
| Undated | COA-OLV000902 - 919 | Employee and Position Vacancy List |
| Undated | COA-KVO000156-COA-KVO000169 | Undated HR timeline |

| Undated | KO - 00325 - 429 | City Ordinances |
|---------|------------------|-----------------|
| Undated | KO - 00431 - 456 | Employee Handbook |
| Undated | KO - 00499 - 503 | Undated Municipal Code re Leave |
| Undated | COA-KVO000952 | Undated Observations re KO EEOC Charge |
| Various | COA-KVO001100 - 1110 | Timeline |
| Various | COA-OLV000916-950 | Job specifications for positions vacant 2011-2013 |
| Various | KO - 00862 - 866 | KO Earnings Information NEEDS REDACTION |
| Various | KO - 00974 - 1144 | Sexual Harassment Investigative File |

**ATTACHMENT G-2**
**DEFENDANTS' EXHIBIT LIST**

| Tab | Document |
|---|---|
| 1. | Complete EEOC File |
| 2. | Complete City of Atlanta Department of Human Resources Investigative Report Horace Wyatt dated May 30, 2012 |
| 3. | Email from K. Oliveira to H. Wyatt dated Dec. 15, 2010 re Touching Base (COA-OLV000274) |
| 4. | Email from K. Oliveira to *Case Managers dated Dec 21, 2010 re Emails (COA-OLV000275) |
| 5. | Email from K. Oliveira to H. Wyatt dated Jan. 24, 2011 re I will be out of the office on Monday (COA-OLV000276) |
| 6. | Email from K. Oliveira to H. Wyatt dated Jan. 26, 2011 re Stop By (COA-OLV000277) |
| 7. | Email from K. Oliveira to H. Wyatt dated Feb. 10, 2011 re Stop By (COA-OLV000253) |
| 8. | Email from K. Oliveira to H. Wyatt dated Mar. 28, 2011 re Vacation/ Depression (COA-OLV000254-55) |
| 9. | Email from K. Oliveira to H. Wyatt dated Apr. 20, 2011 re Conflict with Yolanda  Peek  (COA-OLV000256-7) |
| 10. | Email from K. Oliveira to N. Stephen and H. Wyatt dated Apr. 20, 2011 re Spoke with Horace (COA-OLV000253Emails) |
| 11. | Email from K. Oliveira to H. Wyatt dated May, 24 2011 re I will be out of office today (COA-OLV000258) |
| 12. | Email from K. Oliveira to H. Wyatt, N. Stephen, C. Patterson dated Jun. 16, 2011 re Kelly Oliveira duties and responsibilities (COA-OLV000261) |
| 13. | Email from K. Oliveira to H. Wyatt dated Jun. 16, 2011 re Touching Base – Judge Mickle Comment (COA-OLV000259-260) |
| 14. | Email from C. Deveaux to K. Oliveira re Touching Base – Federal Opportunity (KO 916-917) |
| 15. | Email from K. Oliveira to C. Patterson dated Jun. 22, 2011 re First Appearance and Preliminary Hearings at MCA (COA-OLV000284) |

| 16. | Email from K. Oliveira to H. Wyatt dated Jun 27, 2011 re Daily Responsibilities (COA-OLV000262) |
|-----|------------------------------------------------------------------------------------------------|
| 17. | Email from K. Oliveira to H. Wyatt dated Aug. 29, 2011 re The Fifth DUI Calendar (COA-OLV000263-69) |
| 18. | Email from H. Wyatt to K. Oliveira dated Aug. 29, 2011 re the Fifth DUI Calendar (KO 00919-920) |
| 19. | Email dated Sept 15, 2011 from K. Oliveira to N. Stephens re The Fifth Calendar (COA-OLV000034) |
| 20. | Email dated Sept 15, 2011 from K. Oliveira to N. Stephens re The Fifth Calendar (COA-OLV000178Emails) |
| 21. | Email from K. Oliveira to N. Stephen re The Fifth Calendar (COA-OLV000186Emails) |
| 22. | Email from K. Oliveira to H. Wyatt dated Oct. 21, 2011 re Updates (COA-OLV000281) |
| 23. | Email from H. Wyatt to N. Stephen dated Oct. 21, 2011 re Updates (COA-OLV000187-189) |
| 24. | Email from K. Oliveira to H. Wyatt dated Oct. 31, 2011 re Case Manager Things to Do List for DUI Calendars (COA-OLV000278) |
| 25. | Email from K. Oliveira to H. Wyatt dated Nov. 2, 2011 re Training (COA-OLV000282) |
| 26. | Email from K. Oliveira to N. Stephen dated Nov. 30, 2011 re Touching Base – HR Meeting called from earlier (COA-OLV000034Emails) |
| 27. | Email from H. Wyatt to N. Stephen re 5th Calendar (COA-OLV000222-23Emails) |
| 28. | Email from N. Stephen to C. Graves dated Dec. 1, 2011 re Kelly will work with you tomorrow per your request (COA-OLV000198Emails) |
| 29. | Email from N. Stephen to C. Patterson dated Dec 1., 2011 re New Assignment – Kelly Oliveira (COA-OLV000225Emails) |
| 30. | Email from N. Stephen to H. Wyatt dated Dec. 2, 2011 re Kelly Oliveira's absence today (COA-OLV000191Emails) |
| 31. | Email from K. Oliveira to N. Stephen dated Dec. 12, 2011 re Questionnaire (COA-OLV000030Emails) |

| 32. | Email from K. Oliveira to N. Stephen dated Dec. 13, 2011 re Mike will be by to pick up the 1994-2004 cases ((COA-OLV000035Emails) |
| 33. | Email from J. Deveaux to K. Oliveira dated Dec. 19, 2011 re Touching Base – Kelly Oliveira Resume (KO00932) |
| 34. | Email from K. Oliveira to N. Stephens dated Jan. 1, 2012 re Doctor's Note (COA-OLV000179Emails) |
| 35. | Email from K. Oliveira to N. Stephen dated Jan. 17, 2012 re For Kelly Oliveira (COA-OLV000002-3Emails) |
| 36. | Ltr. From N. Stephen to K. Oliveira dated Jan. 18, 2012 re Leave Time Exhaustion (CAO-OLV00194) |
| 37. | Email from K. Oliveira to R. Cannon dated Feb. 1, 2012 re Healing Community Center  Contact Information (KO 00908) |
| 38. | Email from K. Oliveira to N. Stephen dated Feb. 1, 2012 re Late Morning (COA-OLV0000043-45Emails) |
| 39. | Email from K. Oliveira to N. Stephen dated Feb. 2, 2012 re Late Morning (COA-OLV0000053Emails) |
| 40. | Email from K. Oliveira to N. Stephen dated Feb. 2, 2012 (COA-OLV0000048-52Emails) |
| 41. | Email from N. Stephen to K. Matthews dated Feb. 2, 2012 re Follow up to Ms. Oliveira 2/01/12 (COA-OLV000221Emails) |
| 42. | Email from K. Oliveira to N. Stephen dated Feb. 6, 2012 (COA-OLV0000057-59Emails) |
| 43. | Email from K. Oliveira to N. Stephen dated Feb.16, 2012 (COA-OLV0000062-63Emails) |
| 44. | Email from N. Stephen to C. Patterson dated Mar .12, 2012 re DUI 5th Calendar FTAs/ Kelly Oliveira return to work (COA-OLV000285) |
| 45. | Email from N. Stephen to C. Patterson dated Mar. 12, 2012 re FYI Kelly's return to work (COA-OLV00286) |
| 46. | Email from N. Stephen to H. Wyatt dated Mar. 26, 2012 re Follow up regarding our meeting today (COA-OLV000220Emails) |

| | |
|---|---|
| 47. | Email from N. Stephen to C. Patterson dated Mar. 28, 2012 re DUI 5th Calendar FTA Warrant Project Notes (COA-OLV00287-88) |
| 48. | Email from K. Oliveira to N. Stephen dated Apr. 2, 2012 (COA-OLV0000090Emails) |
| 49. | Email from N. Stephen to C. Patterson dated Apr. 3, 2012 re Statement from Bridget Johnson re conversation with K. Oliveira (COA-OLV00289-291) |
| 50. | Email from N. Stephen to K. Matthews dated Apr. 3, 2012 re Important Meeting with Kristi Matthews on Wed., Apr. 4 @ 10am |
| 51. | Email from N. Stephen to K. Matthews dated Apr. 4, 2012 re Update re K. Oliveira (COA-OLV000262Emails) |
| 52. | Email from K. Matthews to K. Oliveira and N. Stephens dated Apr. 5, 2012 re Important Meeting with Kristie Matthews on Wed., April 4 @ 10 am (COA-OLV0000238-239Emails) |
| 53. | Email from K. Oliveira to K. Reed dated Apr. 6, 2012 re Required conditional return to work (COA-OLV0000108-10Emails) |
| 54. | Email from K. Oliveira to K. Reed dated Apr. 6, 2012 re Important: Meeting with K. Kristi Matthews on Wed., April 4 @10 am (COA-OLV0000111-112Emails) |
| 55. | Ltr. From Y. Yancy to K. Oliveira dated Apr. 6, 2012 re Administrative Leave ((CAO-OLV00141) |
| 56. | Email from K. Oliveira to N. Stephen dated Apr. 9, 2012 re Required conditional return to work (COA-OLV000116-117Emails) |
| 57. | Email from N. Stephen to C. Patterson dated Apr. 9, 2012 re Derris Mitchell's cell (COA-OLV00292-93) |
| 58. | Email from K. Oliveira to R. Cannon date Apr. 9, 2012 re Just Checking on you (KO884-886) |
| 59. | Email from Y. Banks to N. Stephen dated Apr. 10, 2012 re Kelly Oliveira (COA-OLV000534) |
| 60. | Email from K. Oliveira to N. Stephen dated Apr. 12, 2012 re Extension of Administrative Leave (COA-OLV000122Emails) |

| 61. | Email from K. Matthews to K. Oliveira date Apr. 12, 2012 (KO00879-80) |
|---|---|
| 62. | Email from Tricia Solomon to N. Stephen dated Apr.  25, 2012 (COA-OLV000231Emails) |
| 63. | Ltr. From C. Gaines to K. Oliveira dated Apr. 26, 2012 re termination. (CAO-OLV00152) |
| 64. | Separation Notice dated April 26, 2012(CAO-OLV00153) |
| 65. | Separation Notice dated May 9, 2012 (CAO-OLV00155) |
| 66. | Email from N. Stephen to C. Patterson dated Jun 19, 2012 re Touching Base – FedEx package and paycheck/ direct deposit (COA-OLV00296-99) |
| 67. | Email from K. Oliveira to N. Stephen dated Jun. 21, 2012 re Fax # for send DHR your change of address form… (COA-OLV000161-170Emails) |
| 68. | Email from K. Oliveira to C. Patterson, *et al* dated Nov. 26, 2012 re I WILL NEVER STOP FIGHTING FOR THE INJUSTICE DONE TO ME WITHIN THE CITY OF ATLANTA. Never. (COA-OLV000026-29Emails) |
| 69. | Email from B. Johnson to Y. Peek dated Mar. 14, 2013 re I WILL NEVER STOP FIGHTING FOR THE INJUSTICE DONE TO ME WITHIN THE CITY OF ATLANTA. Never. (COA-OLV000301-302) |
| 70. | Email from C. Davenport to C. Patterson, *et al*., dated May 16, 2013 (COA-OLV000300) |
| 71. | Ltr. From L. Amis to K. Oliveira re FMLA leave request dated May 11, 2013 (CAO-OLV00216) |
| 72. | Ltr. From L. Amis to K. Oliveira re FMLA leave request dated Feb 14, 2012 (CAO-OLV00236) |
| 73. | Job Description – Case Manager (COA-OLV000937-39) |
| 74. | Employee Ethics Pledge – K. Oliveira (COA-OLV000047) |
| 75. | Resume – K. Oliveira (CAO-OLV0080-81) |
| 76. | Verification of Treatment from Kaiser Permanente (Apr. 2, 2012) (CAO-OLV000233) |
| 77. | Verification of Treatment from Kaiser Permanente (Apr. 11, 2012 to April 26, 2012) (CAO-OLV00219) |
| 78. | Verification of Treatment from Kaiser (Jan. 17, 2012) (CAO-OLV00250) |

| | |
|---|---|
| 79. | FMLA Forms (April 11, 2012) (CAO-OLV00221-230) |
| 80. | FMLA Forms (Feb 13, 2012) (CAO-OLV00241-244) |
| 81. | Voluntary Shared Leave Request (CAO-OLV00245-248) |
| 82. | Medical Note from Kaiser Permanente dated Feb. 3, 2012 (CAO-OLV00238) |
| 83. | Voice Recordings from K. Oliveira Memo A-G undated (KO943-948) |
| 84. | Video Recordings from K. Oliveira (KO 00949-960) |
| 85. | All Pleadings |
| 86. | All Discovery Responses |
| 87. | All documents received via subpoena |
| 88. | All Deposition Transcripts and exhibits |
| 89. | All documents listed on Plaintiff's exhibit list |

** The parties acknowledge that the Bates-stamped numbers for certain documents appear to be incorrect, but plan to resolve those issues before trial and submit a joint exhibit list to the Court.

## ATTACHMENT G-3
### Plaintiff's Objections to Defendants' Exhibits

At this time Plaintiff does not have any objections to Defendants' exhibit

list.

**ATTACHMENT G-4**
**Defendants' Objections to Plaintiff's Exhibit List**


**At this time, Defendants do not have any objections to Plaintiff's exhibit list.**

## ATTACHMENT H

## PLAINTIFF'S PROPOSED VERDICT FORM

1.      Do you find by a preponderance of the evidence that Defendant Horace Wyatt sexually harassed and retaliated against Plaintiff Oliveira in violation of the Equal Protection Clause of the United States Constitution?

Answer: Yes _____ or No _____

2.      Do you find by a preponderance of the evidence that Defendant City of Atlanta retaliated against Plaintiff Oliveira in violation of Title VII of the Civil Rights Act?

Answer: Yes _____ or No _____

3.      Do you find by a preponderance of the evidence that Defendant City of Atlanta interfered with Plaintiff Oliveira's right to take leave under the Family and Medical Leave Act?

Answer: Yes _____ or No _____

4.      Do you find by a preponderance of the evidence that Defendant City of Atlanta retaliated against Plaintiff Oliveira in violation of the Family and Medical Leave Act?

Answer: Yes _____ or No _____

**IF YOU ANSWER "YES" TO ANY OF THE QUESTIONS ABOVE, PROCEED TO THE NEXT QUESTION.**

**5.     What amount of back pay do you award to Plaintiff Oliveira?**

$_____

**IF YOU ANSWER "YES TO QUESTIONS 1 AND/OR 2 ABOVE, PROCEED TO THE NEXT QUESTION:**

**6.     Please state the amount of compensatory/emotional damages you award**

**to Plaintiff Oliveira:**

$_____

**IF YOU ANSWER "YES" TO QUESTION 1, PROCEED TO THE NEXT QUESTION:**

**7.     Please state the amount of punitive damages you award against**

**Defendant Wyatt:**

$_____

**IF YOU ANSWER "YES" TO EITHER QUESTION 3 OR QUESTION 4 ABOVE, OR IF YOU ANSWER "YES" TO BOTH OF THOSE QUESTIONS, ANSWER THE FOLLOWING QUESTION:**

**8.      Do you find by a preponderance of the evidence that the City of Atlanta's violation of the Family and Medical Leave Act was willful?**

Answer: Yes _____ or No _____

So Say We All.

_____                              _____
Date                                                    Foreperson's Signature

## DEFENDANTS' PROPOSED VERDICT FORM

**I.    Sexual Harassment and Retaliation Against Horace Wyatt Based on §1983**

1.    **Do you find by a preponderance of evidence that Horace Wyatt harassed Plaintiff because of her sex?**

      Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO QUESTION NO. 4.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**2.    Do you find by a preponderance of evidence that Horace Wyatt intentionally committed acts that created a hostile work environment for Plaintiff?**

      Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO QUESTION NO. 4.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**3.    Do you find by a preponderance of evidence that Horace Wyatt had supervisory authority over Plaintiff in the terms and conditions of Plaintiff's employment?**

      Answer: Yes _____ or No _____

**IF YOU ANSWERED "NO" OR "YES", GO TO THE NEXT QUESTION.**

4.     Do you find by a preponderance of evidence that Plaintiff engaged in protected activity.

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION II.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

5.     Do you find by a preponderance of evidence that Horace Wyatt took an adverse employment action against Plaintiff?

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION II.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

6.     Do you find by a preponderance of evidence that Horace Wyatt took an adverse employment action because of Plaintiff's protected activity?

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION II.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

7.     If you answered "YES" to question Nos. 3 or 6 (or both), do you find by a preponderance of evidence that Plaintiff suffered damages because of Horace Wyatt's sexual harassment and/or retaliation?

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION II.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**8.     Do you find by a preponderance of evidence that Plaintiff should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO QUESTION NO. 8.  IF YOUR ANSWER IS "YES," STATE THE AMOUNT AND THEN GO TO THE NEXT QUESTION.     $_____**

**9.     Do you find by a preponderance of evidence that Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "YES," STATE THE AMOUNT.     $_____**

**IF YOU DID NOT AWARD DAMAGES IN RESPONSE TO EITHER QUESTION NO. 8 OR QUESTION NO. 9, GO TO SECTION II.  IF YOU AWARDED DAMAGES IN RESPONSE TO QUESTION NO. 8 OR QUESTION NO. 9 (OR BOTH), GO TO THE NEXT QUESTION.**

**10.     Do you find by a preponderance of evidence that punitive damages should be assessed against Horace Wyatt.**

Answer: Yes _____ or No _____

If your answer is "Yes," state the amount.  $_____

## II.   RETALIATION AGAINST CITY OF ATLANTA BASED ON TITLE VII

1.   **Do you find by a preponderance of evidence that Plaintiff engaged in protected activity?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

1.   **Do you find by a preponderance of evidence that the City of Atlanta took an adverse employment action against Plaintiff?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

2.   **Do you find by a preponderance of evidence that the City of Atlanta took the adverse employment action because of Plaintiff's protected activity?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

3.   **Do you find by a preponderance of evidence that Plaintiff suffered damages because of the adverse employment action?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**4.** **Do you find by a preponderance of evidence that Plaintiff should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," STATE THE AMOUNT AND THEN GO TO THE NEXT QUESTION.     $ _____**

**5.** **Do you find by a preponderance of evidence that Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," THEN GO TO SECTION III.  IF YOUR ANSWER IS "YES," STATE THE AMOUNT AND THEN GO TO SECTION III.   $_____**

**III.** **FMLA Interference and Retaliation against the City of Atlanta**

**1.** **Do you find by a preponderance of evidence that Plaintiff was eligible for FMLA leave?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GO TO QUESTION NO. 6.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**2.      Do you find by a preponderance of evidence that Plaintiff was entitled to FMLA leave?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GO TO QUESTION NO. 6.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**3.      Do you find by a preponderance of evidence that Plaintiff gave the City of Atlanta proper notice of her need for leave?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GO TO QUESTION NO. 6.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**4.      Do you find by a preponderance of evidence that the City of Atlanta interfered with Plaintiff's FMLA by terminating her employment?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO" GO TO QUESTION NO. 6.  IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**5.      Do you find by a preponderance of evidence that the City of Atlanta terminated Plaintiff's employment for reasons that were not related to Plaintiff's FMLA leave?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO" OR "YES," GO TO THE NEXT QUESTION.**

**6.     Do you find by a preponderance of evidence that Plaintiff engaged in protected activity?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GOT TO QUESTION NO. 10.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**7.     Do you find by a preponderance of evidence that the City of Atlanta terminated Plaintiff's employment?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GO TO QUESTION NO. 10.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**8.     Do you find by a preponderance of evidence that the termination was an adverse employment action?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," GO TO QUESTION NO. 10.   IF YOUR ANSWER IS "YES," GO TO THE NEXT QUESTION.**

**9.     Do you find by a preponderance of evidence that the City of Atlanta terminated Plaintiff's employment because of Plaintiff's protected activity?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "NO," OR "YES," GO TO THE NEXT QUESTION.**

10.    **If you answered "YES" to question No. 5 or No. 9 (or both), do you find by a preponderance of evidence that Plaintiff should be awarded damages?**

Answer: Yes _____ or No _____

**IF YOUR ANSWER IS "YES," STATE THE AMOUNT     $_____**

SO SAY WE ALL.

_____                    _____
Date                                                        Foreperson's signature

94